THE STATE OF KANSAS, *Appellee,* v. CHARLES S. AIKINS *et al., Appellants.*

No. 16,852.

1. MONOPOLIES—*Purpose of an Association—By-laws—Dissolution.* Where the by-laws of an association charged with violating the antitrust law are fair on their face, but the practical interpretation given to them by the association makes it obnoxious to the statute, it is grounds for dissolution.

2. —— *Same.* In determining whether an association whose by-laws are fair on their face is violating the antitrust law the court can look beyond the by-laws to discover the true nature and actual purpose and effect of the organization.

3. —— *Extent of the Monopoly.* The fact that ten per cent of the business sought to be monopolized by an association of traders remains in the hands of outsiders does not take the case out of the antitrust statute.

4. —— *Freedom of Contract.* The judgment in this case, condemning a vicious combination, conspiracy and trust to monopolize and restrain trade and prevent competition, does not infringe upon the right of an individual to trade or to

refuse to trade with whomsoever he pleases, or the right of individuals to associate themselves in good faith for lawful purposes.

5. ——— *Illegal Practices Enjoined — Order of Dissolution Stayed.* An association of live-stock traders and its members were violating the antitrust law. The district court enjoined the illegal practices and dissolved the association. The association was capable of performing, and did perform, many valuable services to the market, aside from its wrongful acts. On appeal the judgment granting the injunction was affirmed. The order of dissolution was stayed, and this branch of the case continued to give the defendants an opportunity to amend the by-laws of the association and to conduct their business according to law.

Appeal from Wyandotte district court. Opinion filed January 7, 1911. Affirmed in part; stayed in part; jurisdiction retained.

*R. E. Ball, J. W. Farrar,* and *Keplinger & Trickett,* for the appellants.

*Fred S. Jackson,* attorney-general, for the appellee.

*Per Curiam:* The action was brought by the state to dissolve the Traders' Live Stock Exchange of Kansas City, and to enjoin the exchange and its members from violating the antitrust laws of the state. Judgment was rendered for the state, and the defendants appeal. The assignments of error are all based upon the insufficiency of the evidence.

There were two sides to this controversy in the district court and much evidence was introduced to support each one. That court has performed its function of ascertaining and declaring the facts. Its findings are abundantly sustained, and they are approved.

The appellants seek to draw too sharp a distinction between the association and its members. The exchange is not a corporation. The members in their associate relation constitute the exchange.

It is said that the by-laws on their face, and inter-

preted by the preamble, disclose no wrongful purpose and do not have the necessary or direct effect of pro-ducing violations of the law, as was held in the case of *Anderson v. United States,* 171 U. S. 604; and it is fur-ther said that the court can not look beyond these by-laws to discover the true nature and actual purpose and effect of the organization. All this is to say that the statutes prohibiting trade trusts, combinations and conspiracies can be foiled with a set of by-laws; that the courts can not lift the sheep's skin from the wolf's head and know the creature. In practice and in fact rule 10 means that so far as possible no one shall be permitted to pursue the business of trading in stockers and feeders on the Kansas City market who is not a member of the exchange. The monopoly of ninety per cent of the trade in the largest stocker-and-feeder mar-ket of the world by the members of the exchange, and the wrecked business of practically every man and every company promising to attain prominence as an independent trader, prove the efficiency of the rule. True, the rule has another face—innocent, lawful and laudable; but the court declines to stultify itself by looking upon that side only. The association did not go outside of its rules to enforce boycotts and the like, nor was such action occasioned by individual misin-terpretations of the rules. The rules were the recog-nized basis and authority for those illegal measures.

The fact that approximately ten per cent of the stocker-and-feeder business done at the stockyards re-mains in the hands of outsiders does not take the case out of the statute.

Perhaps the volume of business done at the stock-yards is not seriously reduced because of the existence of the exchange; but free participation in that business is not merely restricted—it is actually suppressed as to everyone who seems likely to become formidable and who is not a member. The price of a membership is now fixed at $1000. When a partnership engages in

trade all the partners must be members (rule 11), and every person employed by a member to buy or sell cattle must also be a member (rule 12).

It is said that the exchange buys nothing and sells nothing. True; but one of the functions of the association is to impose unlawful restrictions upon the full and free pursuit of the business of dealing in stock at the Kansas City yards. It does this as an organization by employing detectives to scent out transactions with outsiders, to warn against such practices and to report them if persisted in, by committee hearings upon such cases, by the discipline of members, by the enforcement of boycotts, by coalition with the commission men's exchange and by other means.

In the face of the testimony of Philo S. Harris and the testimony relating to the boycott of Joe Baker—not to mention plenty more—the protestation in the brief that there is no evidence whatever sustaining the seventh finding of fact is a mere lashing of language to an impotent fury.

It is said that the members compete among themselves in the purchase and sale of cattle. True; but they stifle all other competition as far as they can. It is said that they trade with none but outsiders. But how? Through commission men who must confine their dealings to the members of the exchange or be boycotted out of business.

The right of an individual to trade or to refuse to trade with whomsoever he pleases and the right of the members of this exchange to associate themselves in good faith for the purpose stated in the preamble of their by-laws are not involved in this case or in any way infringed by the judgment. It is a vicious combination, conspiracy and trust to monopolize trade, restrict the pursuit of business and prevent competition, which the state has charged and proved, and which the statutes and the judgment condemn.

The foregoing observations are all that seem to be

necessary to supplement the written opinion of the Honorable L. C. True, the judge who tried the case.

The district court enjoined the defendants, as individuals and in their associated capacity as the Traders' Live Stock Exchange, from pursuing the illegal practices of which they were found guilty, and also dissolved the exchange. A plea is made against the dissolution of the exchange, based upon the genuine public service which it is capable of rendering and which it does in fact render at the Kansas City livestock market. The value of this service is not disputed. The trouble is that these traders have never been able to resist the temptation to grasp the reins of the market and sit in the seat of monopoly. If the rules of the exchange, particularly rule 10, were modified, and the functions of the organization were confined strictly within their legitimate field, there would be no occasion for a judgment of dissolution. If, however, it can not operate without curtailing the full, free and fair diffusion of the benefits and opportunities of the Kansas City market, it ought to be dissolved.

The findings of fact are before this court and it has the power to render such judgment as justice to the state and to the defendants requires. Under the circumstances the following order will probably best meet the situation: The judgment of the district court, so far as it enjoins the defendants individually and enjoins the exchange itself from the illegal practices stated in the findings, is affirmed, the state to recover all the costs of the case. The judgment of the district court dissolving the exchange is stayed until the further order of this court. Jurisdiction of this branch of the case is retained for the present. At some future time it may be brought upon the docket by either the plaintiff or the defendants for final disposition. The court will then exercise its discretion in the additional light afforded by any showing which may then be made.