# GEORGE GRISIM v. SOUTH ST. PAUL LIVE STOCK EXCHANGE.[1]

June 2, 1922.

No. 22,581.

**Statute applicable to live stock exchange.**

1. Chapter 344, Laws 1921, applies to a live stock exchange, although stock is neither bought nor sold at its place of business.

**State may regulate association of live stock dealers.**

2. An association of commission men, dealing in live stock at public stockyards, may be required to observe such reasonable regulations as the state sees fit to impose in the exercise of its police power.

**Act of 1921 valid.**

3. Chapter 344 is such a regulation and has a substantial relation to its ostensible object and a tendency to accomplish it, and does not transcend the limitations the legislature must observe in exerting the police power.

**By-laws of exchange may be annulled by statute.**

4. By-laws regulating the business conduct of members of an incorporated live stock exchange may be annulled by the legislature in the proper exercise of the police power without impairing the contract obligations of the state and the corporation or of the corporation and its members.

**Property in exchange membership not taken without due process of law.**

5. The rights and privileges of membership in a corporation are property and are subject to reasonable restraints and regulations imposed by the legislature. Chapter 344 does not deprive defendant's members of property without due process of law.

Action in the district court for Ramsey county to restrain defendant from collecting a fine imposed upon plaintiff or from interfering with his rights as a member of defendant corporation. From

[1]Reported in 188 N. W. 729.

an order, Michael, J., granting a temporary injunction, defendant appealed. Affirmed.

*Morphy, Bradford & Cummins,* for appellant.

*P. H. O'Keefe,* for respondent.

*Clifford L. Hilton,* Attorney General, and *Montreville J. Brown,* filed a brief for the state as amicus curiae.

LEES, C.

Defendant appeals from an order restraining it from collecting a fine imposed upon plaintiff for a violation of its rules. Defendant is a corporation without capital stock and was organized pursuant to the provisions of chapter 138, p. 193, Laws of 1883, and acts amendatory thereof, now embraced in sections 6536 and 6537, G. S. 1913. One of the objects for which it was organized was to facilitate and regulate the business of dealing in live stock at South St. Paul. It has 98 members, of whom plaintiff is one. Members pay an initiation fee of $5,000 and execute a bond of $20,000 to guarantee payment for live stock sold on consignment or bought of other members. Defendant's rules prohibit members from buying live stock from other commission merchants who are not members of the exchange and from trading with nonmember yard dealers and order buyers, or cappers, buying and selling live stock at the South St. Paul yards. They also prohibit them from dealing with country buyers when accompanied by a capper, yard dealer or order buyer not a member of the exchange. Plaintiff made a purchase from an outside yard dealer, was fined for this violation of the rules, and brought this action to restrain the collection of the fine.

Chapter 344, p. 524, Laws of 1921, declares that a by-law of a live stock exchange maintaining a place of business for its members where live stock is bought, sold or exchanged, which prohibits members from buying, selling or exchanging live stock with nonmembers, is contrary to public policy and shall be null and void.

Defendant does not deal in live stock and is not engaged in the commission business. It does not maintain or operate a trading room, but has an office at South St. Paul in charge of its secretary, where the board of directors meet, and also the members when an-

nual or special meetings are held. The members do no trading at this office. Their business is carried on either at their individual offices or in the yards of the St. Paul Union Stockyards Company, an independent corporation. If defendant is such a live stock exchange chapter 344 is aimed at and the act is constitutional, the restraining order must be upheld.

1. We are of the opinion that defendant comes within the terms of the act, although live stock is neither bought nor sold at its place of business. The legislature intended to regulate the business of buying and selling live stock. That is the business in which defendant's members are engaged. In a practical sense, they are the exchange. Their organization is an auxiliary of their business. By means of it supervisory powers are exercised over the business. Members of the organization are not free to do business as they see fit. They are controlled by the corporation and its rules. It is the only live stock exchange in the state. It may be conceded that, literally construed, the act does not apply to defendant, but it should not be thus construed. It is our duty to ascertain and give effect to the intention of the legislature rather than to give a literal reading to a statute which would defeat its essential object. The act is futile if defendant does not come within its purview. 3 Dunnell, Minn. Dig. §§ 8940-8943.

2. In State v. Rogers, 149 Minn. 151, 182 N. W. 1005, it was held that the business of commission merchants, buying and selling live stock at the South St. Paul yards, is one affected with a public interest. In Stafford v. Wallace, 258 U. S. 495, 516, 42 Sup. Ct. 397, decided May 1, 1922, the Supreme Court of the United States said:

"The stockyards are but a throat through which the current flows, and the transactions which occur therein * * * cannot be separated from the movement to which they contribute. * * * The commission men are essential in making the sales, without which the flow of the current would be obstructed, and this, whether they are made to packers or dealers. The dealers are essential to the sales to the stock farmers and feeders."

And again [p. 515]:

"The packers and their agents and the dealers who are the buyers are at the elbow of the commission men, and their relations are constant and close."

Defendant, through its control over its members, has a direct connection with their business. The conclusion follows that, since public stockyards and the commission men who there transact business are subject to regulation, an association of such commission men may also be required to observe such reasonable regulations as the state sees fit to impose in the exercise of its police power. House v. Mayes, 219 U. S. 270, 31 Sup. Ct. 234, 55 L. ed. 213; Brodnax v. Missouri, 219 U. S. 285, 31 Sup. Ct. 238, 55 L. ed. 219.

3. Is chapter 344 a reasonable regulation having a substantial relation to its ostensible object and a tendency to accomplish it? In general, a police regulation to be valid must tend to promote the general welfare; must not be arbitrary or unreasonable; must not capriciously strike down liberty or the rights of property; and must have some substantial relation to evils sought to be eradicated or benefits sought to be secured to the public. The nature of the police power and the limitations to which it is subject have frequently been discussed. Rippe v. Becker, 56 Minn. 100, 57 N. W. 331, 22 L. R. A. 857; State v. Chicago, M. & St. P. Ry. Co. 68 Minn. 381, 71 N. W. 400, 38 L. R. A. 672, 64 Am. St. 482; State v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 Am. St. 681; State v. Ryder, 126 Minn. 95, 147 N. W. 953, 5 A. L. R. 1449; State v. Houghton, 134 Minn. 226, 158 N. W. 1017, L. R. A. 1917F, 1050; Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542. All questions respecting the propriety and public necessity of exercising the power are committed to the legislature and its determination is ordinarily final and not open to judicial review. Its determination that public interests require a particular exercise of the power is presumptively valid, but the presumption is not conclusive. State v. St. Paul City Ry. Co. 122 Minn. 163, 142 N. W. 136.

To answer the question now under consideration, we must inquire into the purpose of the legislature in abrogating rules of live stock

exchanges which prohibit members from dealing with outside trad-
ers.   The effect of such rules is to limit the field of activity of the
members.   At first blush they appear to be in partial restraint of
trade, although it was held in Anderson v. United States, 171 U. S.
604, 19 Sup. Ct. 50, 43 L. ed. 300, that they did not transgress the
Act of Congress of July 2, 1890, prohibiting monopolies and combin-
ations in restraint of commerce between the states.   In State v.
Stock Exchange, 211 Mo. 181, 109 S. W. 675, 124 Am. St. 776, and
State v. Aikins, 83 Kan. 792, 112 Pac. 605, the evils which resulted
from the activities of the Kansas City Exchange are described.   In
the Kansas case, after adverting to the genuine public service which
the exchange was capable of rendering and did in fact render, the
court remarked that "these traders have never been able to resist
the temptation to grasp the reins of the market and sit in the seat
of monoply."   The record before us discloses no abuses of defendant's
potential power over the live stock business at the South St. Paul
market.   For aught that appears, its control over its members has
been wholesome.   Nothing in its rules directly tends to give its mem-
bers a monoply of the business.   A shipper may accompany his
cattle to the yards and dispose of them himself.   But, without tech-
nical knowledge of the business, he is not likely to obtain the best
results.   Packers and butchers may buy animals for slaughter from
defendant's members or directly from the owners and shippers.
So may men who make a business of feeding cattle, but here again
technical knowledge of the business is a valuable asset.   Defendant
may render useful services to the public by its control over its mem-
bers, but the power it wields over them is capable of abuse.   A co-
operative association, if it would market live stock at South St.
Paul to the best advantage, would necessarily have to employ a mem-
ber of the exchange.   If it established a selling agency there, it could
have no dealings with defendant's 98 members, unless those in the
association were admitted to membership in the exchange and sev-
erally paid the required fee of $5,000.   These considerations may have
induced the legislature to remove the ban on trading with non-
members of live stock exchanges.   If it had acted unwisely, time
and experience will reveal it.   It is not for us to pass judgment on

the expediency of political or economic theories which the legislature has enacted into a law, so long as the law does not go beyond the restrictions surrounding the legitimate, exercise of the police power. Nelson v. City of Minneapolis, 112 Minn. 16, 127 N. W. 445, 29 L. R. A. (N. S.) 260; Chicago B. & Q. Ry. Co. v. McGuire, 219 U. S. 549, 31 Sup. Ct. 259, 55 L. ed. 328. We cannot say that chapter 344 transcends the limitations which the legislature must observe.

4. It is argued at length that the act impairs the obligation of the contract defendant had with the state by virtue of its corporate charter, and also the contract between the corporation and its members. The rules were established by defendant's by-laws. It would seem, as the trial judge aptly remarked, that the right to continue a by-law in force does not inhere in or form part of the charter contract between a corporation and the state. This court has held that the charter of a private corporation is a contract between the state and the corporators and between the corporators themselves, and is, therefore, protected by the Constitution from impairment against the will of the corporation; that the articles of incorporation are the charter; that the rights of stockholders are fixed thereby, and that the provisions of the articles are in the nature of a fundamental contract between the corporators which neither party is at liberty to violate, Bergman v. St. Paul M. B. Assn. 29 Minn. 275, 13 N. W. 120; Mower v. Staples, 32 Minn. 284, 20 N. W. 225; Beyer v. Woolpert, 99 Minn. 475, 109 N. W. 1116, and, in the second case cited, that the state may amend the charter to some extent in the exercise of the police power without impairing the obligation of the contract. Corporate by-laws may create contract rights between a corporation and its members. In adopting the by-law under consideration, defendant exercised what may be termed its own police power, which of necessity must be subordinate to the greater and all-inclusive police power of the state. All contracts relating to matters within the domain of the power are subject to the exercise thereof, for the legislature cannot surrender it or bind the state not to exert it. Butler v. Chambers, 36 Minn. 69, 30 N. W. 308, 1 Am. St. 638; State v. Smith, 58 Minn. 35, 59 N. W. 545, 25 L. R. A. 759;

State v. Chicago, M. & St. P. Ry. Co. 135 Minn. 277, 160 N. W. 773, L. R. A. 1917C, 1174; Marcus Brown Holding Co. v. Feldman, 256 U. S. 770, 41 Sup. Ct. 465, 65 L. ed. 877.

5. The final contention is that the act has the effect of depriving defendant's members of property without due process of law. We are told that it destroys the value of a membership in the exchange because it strikes down the prohibition against trading with nonmembers. It seems clear that, notwithstanding the abrogation of the rule, members may voluntarily refrain from trading with nonmembers, and, if they find the rule beneficial, it is fair to assume that business expediency alone will induce them to have no business intercourse with outside traders. Membership rights and privileges may be property, but they are property which is held subject to the police power of the state so to regulate and control its use as to secure the public welfare. Rights of property, like other social and conventional rights, are subject to such reasonable restraints and regulations as the legislature may think necessary and expedient, provided always that it does not transcend the governing and controlling power vested in it by the Constitution. In short, the subordination of property rights to the just exercise of the police power is as complete as it is to the proper exercise of the taxing power. State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047; Munn v. Illinois, 94 U. S. 113, 24 L. ed. 77; Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. 6, 32 L. ed. 346; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. 468, 36 L. ed. 247; Brass v. North Dakota, 153 U. S. 391, 14 Sup. Ct. 857, 38 L. ed. 757; House v. Mayes, supra.

Decision of this case was delayed pending the determination of the so-called Stockyards cases in the United States Supreme Court. The opinion in Stafford v. Wallace was not announced until May 1. The effect of that decision is to restrict the state to a somewhat limited field in regulating the live stock business, but there is nothing in the decision, or in the act of Congress or the orders of the secretary of agriculture which is in conflict or inconsistent with chapter 344.

After careful consideration of all grounds upon which the act is assailed, we conclude that it is a valid exertion of the police power of the state.

Order affirmed.