# STATE EX REL. FLOYD B. OLSON v. HOWARD A. GUILFORD AND ANOTHER.[1]

May 25, 1928.

No. 26,696.

**Violation of 1925 act is a public nuisance.**

1. A newspaper business conducted in violation of L. 1925, c. 285, is a public nuisance.

**Equity may abate a public nuisance.**

2. Equity has jurisdiction to enjoin and abate public nuisances.

**Legislature may declare publication of defamatory newspaper a public nuisance.**

3. The inherent nature of the business of regularly and customarily publishing and circulating a malicious, scandalous and defamatory newspaper bears such a relation to the social and moral welfare that the legislature, in the legitimate exercise of the police power, may declare it to be a public nuisance.

**Constitutional liberty of the press defined.**

4. The constitutional liberty of the press means the right to publish the truth with impunity, with good motives and for justifiable ends; liberty to publish with complete immunity from legal censure and punishment for the publication so long as it is not harmful in its character when tested by such standards as the law affords.

**Constitution protects the use but not the abuse of the press.**

Such a business conducted in violation of L. 1925, c. 285, is an abuse of the press. It was never the intention of the constitution to afford protection to a publication devoted to scandal and defamation. It protects the use and not abuse of the press.

**Due process of law not violated by 1925 act.**

5. Said statute does not violate the due process of law guaranty found in our constitution.

**Defendants not entitled to jury trial in equitable actions.**

6. Defendants in equitable actions of this character are not entitled to a jury trial.

**Jury trial guaranteed only in actions at law.**

The constitutional guaranty of a jury trial relates only to actions at law.

[1]Reported in 219 N. W. 770.

Constitutional Law, 12 C. J. p. 952 n. 66, 73, 76; p. 953 n. 86; p. 1197 n. 11; p. 1279 n. 71.

Juries, 35 C. J. p. 150 n. 21; p. 159 n. 33; p. 171 n. 68.

Nuisances, 29 Cyc. p. 1165 n. 88; p. 1197 n. 65, 66; p. 1219 n. 21.

See note in 5 A. L. R. 1474; 22 A. L. R. 542; 10 R. C. L. 270; 2 R. C. L. Supp. 1000; 20 R. C. L. pp. 474-476.

See note in 5 A. L. R. 1480; 16 R. C. L. 209, 211; 3 R. C. L. Supp. 550; 6 R. C. L. Supp. 952.

See 6 R. C. L. pp. 254, 255; 2 R. C. L. Supp. 79; 5 R. C. L. Supp. 333.

Defendants appealed from an order of the district court for Hennepin county, Baldwin, J. overruling their demurrer to the complaint, the question involved being certified as important and doubtful. Affirmed.

*Thomas E. Latimer* and *Elsie H. Latimer,* for appellants.

*Floyd B. Olson,* County Attorney, and *William C. Larson,* Assistant County Attorney, for respondent.

WILSON, C. J.

Appeal from an order overruling a demurrer to the complaint, the question involved being certified to this court as doubtful and important.

Action to abate and enjoin a nuisance based upon L. 1925, p. 358, c. 285, which in part reads as follows:

"Any person who * * * shall be engaged in the business of regularly or customarily producing, publishing or circulating, having in possession, selling or giving away * * * (b) a malicious, scandalous and defamatory newspaper * * * is guilty of a nuisance, and all persons guilty of such nuisance may be enjoined, as hereinafter provided. * * *

"In actions brought under (b) above, there shall be available the defense that the truth was published with good motives and for justifiable ends."

The complaint specifically alleges a violation of the statute in nine issues of the paper between September 24, 1927, and November 19,

1927, inclusive, in which such attacks were made upon one Charles G. Davis, the mayor of Minneapolis, the chief of police of Minneapolis, the county attorney of Hennepin county, the Jewish race, and the members of the grand jury of Hennepin county. For present purposes we must consider the allegations of the complaint to be true. Defendants challenge the validity of this statute.

1. The word "nuisance" is sufficiently comprehensive to include the alleged unlawful business which necessarily works harm, injury and prejudice to the individual and is prejudicial to the public welfare. Since it annoys, injures and endangers the comfort and repose of a considerable number of persons it is a nuisance within G. S. 1923, § 10241(1). Perhaps it also endangers safety within the meaning of the statute. Moreover, the people speaking through their representatives in the legitimate exercise of the police power have declared such acts a nuisance. Our legislature has declared the following to be nuisances: places where intoxicating liquor is illegally sold, G. S. 1923, § 3200; houses of prostitution, G. S. 1923, § 10199; dogs, G. S. 1923, § 7287; malicious fences, G. S. 1923, § 9581; itinerant carnivals, G. S. 1923, § 10242; lotteries, G. S. 1923, § 10209; and noxious weeds, G. S. 1923, § 6146. This legislative power has been used as to various things constituting nuisances. 21 Cent. L. J. 305.

2. We are not here concerned with the power of equity to enjoin libel or otherwise to protect personal rights. The statute is directed at an existing nuisance arising out of a continued and habitual indulgence in malice, scandal and defamation. Such is the declared purpose of the statute. Equity has always had jurisdiction to enjoin and abate public nuisances. Township of Hutchinson v. Filk, 44 Minn. 536, 47 N. W. 255; City of Jordan v. Leonard, 119 Minn. 162, 137 N. W. 740; State ex rel. Wilcox v. Ryder, 126 Minn. 95, 147 N. W. 953, 5 A. L. R. 1449; City of Marshall v. Cook, 169 Minn. 248, 211 N. W. 328; Town of Linden v. Fischer, 154 Minn. 354, 191 N. W. 901; 29 Cyc. 1219; 35 C. J. 171, § 45. Even sports may sometimes be enjoined as private nuisances. 21 Yale L. J. 414.

3. In the exercise of the police power of the state the legislature must resort to measures which tend to accomplish the desired pur-

pose and on the other hand must not exceed the reasonable demands of the occasion. Police power involves the imposition of such restrictions upon private rights as are practically necessary for the general welfare, i. e. the public interest, and it must be limited to such matters. State ex rel. Beek v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 A. S. R. 681; State ex rel. Wilcox v. Ryder, 126 Minn. 95, 107, 147 N. W. 953, 5 A. L. R. 1449; Grisim v. South St. Paul L. Exch. 152 Minn. 271, 188 N. W. 729; State ex rel. Lachtman v. Houghton, 134 Minn. 226, 158 N. W. 1017, L. R. A. 1917F, 1050; 1 Dunnell, Minn. Dig. (2 ed.) §§ 1603, 1605.

Under modern authorities there can be no doubt that the police power includes all regulations designed to promote public convenience, happiness, general welfare and prosperity, an orderly state of society, the comfort of the people, and peace, and that it extends to all great public needs as well as to regulations designed to promote public health, morals or safety. It is the prerogative of the legislature to determine not only what the public interests require but also the measures necessary to protect such interests. It has no right arbitrarily to declare something to be a nuisance which is clearly not one. But in that regard a great deal must be left to its discretion, and if the object to be accomplished is conducive to public interests, as it is here, it may exercise a large liberty of choice in the means employed. Lawton v. Steele, 152 U. S. 133, 140, 14 S. Ct. 499, 38 L. ed. 385; State ex rel. Wilcox v. Ryder, 126 Minn. 95, 147 N. W. 953, 5 A. L. R. 1449. The determination of the legislature is ordinarily final, presumptively valid; but the presumption is not conclusive. Grisim v. South St. Paul L. Exch. 152 Minn. 271, 188 N. W. 729. For our purposes it is sufficient that a state of facts could exist which would justify this legislation. Our inquiry relates to the power, not to the expediency. Munn v. Illinois, 94 U. S. 113, 24 L. ed. 77. Every reasonable presumption must be indulged in favor of the validity of the statute. Unless its invalidity clearly appears it must be sustained. The courts will interfere only where the regulations adopted are arbitrary, oppressive and unreasonable. Home Tel. & Tel. Co. v. City of Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 53 L. ed. 176; People v. Weiner, 271 Ill. 74,

110 N. E. 870, L. R. A. 1916C, 775, Ann. Cas. 1917C, 1065; State v. Morse, 84 Vt. 387, 80 A. 189, 34 L.R.A.(N.S.) 190, Ann. Cas. 1913B, 218; State ex rel. McBride v. Superior Court, 103 Wash. 409, 174 P. 973; People ex rel. Barmore v. Robertson, 302 Ill. 422, 134 N. E. 815, 22 A. L. R. 835; Town of Kinghurst v. International Lbr. Co. supra, p. 305. It must be remembered that the police power is a governmental right in the state which authorizes it to prohibit all things harmful to the comfort, safety and welfare of society. It is to the public what the law of necessity is to the individual. State v. Mountain Timber Co. 75 Wash. 581, 135 P. 645, L. R. A. 1917D, 10. The constituent elements of the declared nuisance are the customary and regular dissemination by means of a newspaper which finds its way into families, reaching the young as well as the mature, of a selection of scandalous and defamatory articles treated in such a way as to excite attention and interest so as to command circulation.

In State v. Pioneer Press Co. 100 Minn. 173, 110 N. W. 867, 9 L.R.A.(N.S.) 480, 117 A. S. R. 684, 10 Ann. Cas. 351, a statute forbidding publication of details of execution of criminals was sustained as a valid police measure.

In State v. Holm, 139 Minn. 267, 166 N. W. 181, L. R. A. 1918C, 304, it was held that the state may deny the right to publish and teach things injurious to society.

In the development and growth of the law and our institutions the tendency is to extend rather than to restrict the police power. State ex rel. City of Minneapolis v. St. P. M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 A. S. R. 581, 8 Ann. Cas. 1047; C. M. & St. P. Ry. Co. v. City of Minneapolis, 115 Minn. 460, 133 N. W. 169, 51 L.R.A.(N.S.) 236, Ann. Cas. 1912D, 1029; State ex rel. Twin City B. & I. Co. v. Houghton, 144 Minn. 1, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585.

The business at which the statute is directed involves more than libel. Mere libel under the statute does not constitute the nuisance. The statute is not directed at threatened libel but at an existing business which, generally speaking, involves more than libel. The distribution of scandalous matter is detrimental to public morals

and to the general welfare. It tends to disturb the peace of the community. Being defamatory and malicious, it tends to provoke assaults and the commission of crime. It has no concern with the publication of the truth, with good motives and for justifiable ends. There is no constitutional right to publish a fact merely because it is true. It is a matter of common knowledge that prosecutions under the criminal libel statutes do not result in efficient repression or suppression of the evils of scandal. Men who are the victims of such assaults seldom resort to the courts. This is especially true if their sins are exposed and the only question relates to whether it was done with good motives and for justifiable ends. This law is not for the protection of the person attacked nor to punish the wrongdoer. It is for the protection of the public welfare. The courts have uniformly sustained the constitutionality of statutes conferring upon courts of equity power to restrain public nuisances although the acts constitute crime and the plaintiff's property rights are not involved. Anno. 5 A. L. R. 1476, and cases cited. The inherent nature of the business bears such a relation to the social and moral welfare that we hold that the legislature was in the legitimate exercise of the police power when it declared such business to be a public nuisance. The right to do this was forced upon the state in the exercise of its functions, or rather duty, to preserve that equilibrium of relative right which must be preserved in organized society.

4. "The liberty of the press shall forever remain inviolate, and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right." Minn. Const. art. 1, § 3.

The liberty of the press consists in the right to publish the truth with impunity, with good motives and for justifiable ends; liberty to publish with complete immunity from legal censure and punishment for the publication, so long as it is not harmful in its character when tested by such standards as the law affords. The constitutional protection meant the abolition of censorship and that governmental permission or license was not to be required; and indeed our constitution, like the first amendment to the United

States constitution, effectually struck down the ancient system or method of fettering the press by a licenser and gave the individual freedom to act—but to act properly or within legal rules of propriety. In fact such was the rule of common law when our constitution was adopted. 12 C. J. 952, § 467. Our constitutional provisions intended to prevent the restraints upon publications which had been practiced by other governments. Patterson v. Colorado, 205 U. S. 454, 27 S. Ct. 556, 51 L. ed. 879. In Minnesota no agency can hush the sincere and honest voice of the press; but our constitution was never intended to protect malice, scandal and defamation when untrue or published with bad motives or without justifiable ends. It is a shield for the honest, careful and conscientious press. Liberty of the press does not mean that an evil-minded person may publish just anything any more than the constitutional right of free assembly authorizes and legalizes unlawful assemblies and riots. There is a legal obligation on the part of all who write and publish to do so in such a manner as not to offend against public decency, public morals and public laws. Otherwise our statute of criminal libel would not be valid. In making the publisher responsible for the abuse of the press the legislature is authorized to make laws to bridle the appetites of those who thrive upon scandal and rejoice in its consequences.

It was never the intention of the constitution to afford protection to a publication devoted to scandal and defamation. He who uses the press is responsible for its abuse. He may be required by legislation to have regard for the vital interests of society. Immunity in the mischievous use of the press is as inconsistent with civil liberty as prohibition of its harmless use. The constitutional rights of the individual are as sacred as the liberty of the press. Newspaper proprietors have no claims to indulgence. They have the same rights that the rest of the community has, and no more. It is the liberty of the press that is guaranteed—not the licentiousness. The press can be free and men can freely speak and write without indulging in malice, scandal and defamation; and the great privilege of such liberty was never intended as a refuge for the defamer and

the scandalmonger. Defendants stand before us upon the record as being regularly and customarily engaged in a business of conducting a newspaper sending to the public malicious, scandalous and defamatory printed matter. Obviously indulgence in such publications would soon deprave the moral taste of society and render it miserable. A business that depends largely for its success upon malice, scandal and defamation can be of no real service to society.

It is not a violation of the liberty of the press or of the freedom of speech for the legislature to provide a remedy for their abuse. Robison v. H. & R. Employees, 35 Idaho, 418, 207 P. 132, 27 A. L. R. 642. Nor does the constitutional guaranty of the liberty of the press deprive the state of its police power to enact additional laws for the welfare of society such as hereinbefore stated. 12 C. J. 952, § 468.

The constitutional right of free speech is not violated by a law prohibiting public addresses on public grounds. Commonwealth v. Davis, 162 Mass. 510, 39 N. E. 113, 26 L. R. A. 712, 44 A. S. R. 389.

A statute making a publication of a false report of the proceedings of any court a contempt does not violate such constitutional guaranty of liberty of the press. State ex rel. Haskell v. Faulds, 17 Mont. 140, 42 P. 285; State ex inf. Crow v. Shepherd, 177 Mo. 205, 76 S. W. 79, 99 A. S. R. 624. Nor is a criminal libel statute in derogation of the freedom of the press. Morton v. State, 3 Tex. App. 510. A law making it a crime to publish an article inciting or encouraging crime is not violative of the freedom of the press. State v. Fox, 71 Wash. 185, 127 P. 1111; Fox v. Washington, 236 U. S. 273, 35 S. Ct. 383, 59 L. ed. 573. The constitutional guaranty of a free press cannot be made a shield for the violation of criminal laws. Tyomies Pub. Co. v. U. S. (C. C. A.) 211 F. 385. The statute prohibiting the mailing of obscene matter is not in derogation of the liberty of the press. Id. 211 F. 385; Davis v. Beason, 133 U. S. 333, 10 S. Ct. 299, 33 L. ed. 637; Knowles v. U. S. (C. C. A.) 170 F. 409. The press cannot justify doing evil on the theory that good may result therefrom. McDougall v. Sheridan, 23 Idaho, 191, 128 P. 954. It is the use and not the abuse of the liberty of the press that is

guarded by our fundamental law. Diener v. Star-Chronicle Pub. Co. 230 Mo. 613, 132 S. W. 1143, 33 L.R.A.(N.S.) 216. Liberty of the press and freedom of speech under the constitution do not mean the unrestrained privilege to write and say what one pleases at all times and under all circumstances. Warren v. U. S. 183 F. 718, 33 L.R.A.(N.S.) 800.

5. The due process clause in our constitution was never intended to limit the subjects on which the police power of a state may lawfully be exerted. This guaranty has never been construed as being incompatible with the principle, equally vital because essential to peace and safety, that all property is held under the implied obligation that the owner's use of it shall not be injurious to the community. 12 C. J. 1197, § 962. Indeed the police power of the state includes the right to destroy or abate a public nuisance. Property so destroyed is not taken for public use, and therefore there is no obligation to make compensation for such taking. 6 R. C. L. 480, § 478. The rights of private property are subservient to the public right to be free from nuisances which may be abated without compensation. 12 C. J. 1279, § 1085. The statute involved does not violate the due process of law guaranty. State ex rel. Robertson v. Wheeler, 131 Minn. 308, 155 N. W. 90; Anno. 5 A. L. R. 1483.

6. In equitable actions of this character the defendants are not entitled to a jury trial. State ex rel. Wilcox v. Ryder, 126 Minn. 95, 147 N. W. 953, 5 A. L. R. 1449; Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127. The authorities are collected in Anno. 5 A. L. R. 1480. As indicated, this kind of an action involves more than a mere libel. The purpose of this statute is to repress the nuisance by a direct attack upon the property involved. It inflicts no personal penalties as punishments for evils involved. The mere fact that the law of libel permits a jury in an action for criminal libel to pass upon the law as well as upon the facts does not mean that, if in an equity action to enjoin a nuisance facts are involved which might in themselves be sufficient to constitute libel, a jury must be had. Indeed in such an action the law of libel as such is not involved, and there is no occasion to ask a jury to serve in its unusual character. The fact that much will frequently have to be estab-

lished in such an action as this that would have to be established in an action for criminal libel does not invoke and make applicable the peculiar rules of procedure which apply exclusively to such actions for libel. The long established rule which makes the jury the judge of the law and facts in a prosecution for criminal libel does not mean that a court of equity cannot decide what is a libel when it is important only as one of the elements necessary to constitute the particular nuisance. The constitutional guaranty of a jury trial relates only to actions at law. Minn. Const. art. 1, § 4; U. S. Const. Amend. VI and VII; 16 R. C. L. p. 209, § 27, p. 214, § 32. It has been said that persons dealing in intoxicating liquors have no vested right in a jury trial in order to determine whether or not their places of business are public nuisances. State ex rel. Attorney General v. Stoughton Club, 163 Wis. 362, 158 N. W. 93. Persons dealing in scandal and defamation have no greater right.

Affirmed.

HILTON, J. took no part.