MELVIN HOLMBERG AND ANOTHER v.
RAYMOND BERGIN AND ANOTHER.

172 N. W. (2d) 739.

December 5, 1969—No. 41756.

*Schwinn, Nelson & Courey* and *Arthur Sund Nelson,* for appellants.

*R. Gordon Nesvig,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

NELSON, JUSTICE.

Defendants, Raymond Bergin and Vernice Bergin, appeal from a judgment of the district court entered August 27, 1968.

Plaintiffs and defendants are adjoining landowners residing respectively at 5441 and 5437 Woodlawn Boulevard in the city of Minneapolis. The north line of plaintiffs' property is the same as the south line of defendants' property.

Defendants purchased their lot in 1941 and in 1942 planted an elm tree on their property approximately 15 inches north of the boundary line which separates plaintiffs' lot from defendants' lot. Defendants have maintained the tree and have exercised sole control over it since it was planted. Plaintiffs purchased their lot in 1952 and in 1954 constructed a chain-link fence on their property 4 inches south of the common boundary line. When the fence was completed, the tree was 6 inches away from it and 2 inches away from the boundary line, so the tree did not touch or interfere with the fence in any way. There is no dispute as to the location of the boundary line.

At the time of the trial in July 1968, the tree in question had grown to a height of 75 feet, its trunk had a diameter of 2 1/2 feet, and it was protruding .64 feet, or about 8 inches, onto plaintiffs' property. At the time of trial, the tree was still growing. Its roots which have extended onto plaintiffs' property have pushed plaintiffs' fence out of line and have made the use of a gate in the fence impossible. The tree is located close to both houses and the roots, being cramped for room, have pushed up a large hump in the ground around the base of the tree. The roots have raised the ground level from the base of the tree to plaintiffs' sidewalk and have caused it to tip toward their house, resulting in drainage into their basement. In order to correct this situation, plaintiffs were forced to construct a new sidewalk at the stipulated cost of $150. Due to the fact that the tree and the roots have continued to grow, plaintiffs' new sidewalk is now also cracked. Drainage of plaintiffs' lot from back to front is also hampered by the hump containing the roots of this tree.

Both plaintiffs' and defendants' expert witnesses agree that this tree has a shallow root system and has no deep tap roots, and that most of the roots are contained near the surface of the

ground. Both further testified that removal of a substantial portion of the roots from the south side of the tree would increase the hazard of the tree's blowing over in windstorms, thereby endangering the homes of plaintiffs, defendants, and their neighbors. Plaintiffs' expert witness testified that 16 inches of soil would have to be removed in order to restore plaintiffs' lot to its original grade level and that taking out 16 inches around half of the tree's base would be likely to kill the tree. He further testified that, although the trunk of the tree is presently straight, more branches have been cut from the south side of the tree than from the north side so that there is a greater weight on the north side.

Defendants' expert witness stated that the lot could be brought to grade by removing 12 inches of soil and roots, but that the removal of that amount of soil and roots would be disastrous and result in the death of the tree. He further testified that the lots in the block are 50 feet wide. The expert admitted that he was prejudiced in favor of the aesthetic quality of the tree. This is very likely true, as this witness donated the tree as a memento to defendants' son, and a class instructed by this witness selected the location where it is planted.

It appears from the record that removal of the tree would reasonably cost $235, plus an additional $60 expense if the stump were to be removed. Defendant Raymond Bergin testified that the value of defendants' property would be depreciated in the amount of $5,000 if the tree were removed. The trial court, however, found that the tree was a nuisance and ordered it removed by defendants at their own expense. Plaintiffs were ordered to temporarily remove the fence along the common boundary so as not to interfere with the removal of the tree. No damages were awarded to plaintiffs due to their failure to take advantage of earlier opportunities to remove roots.

The following issues are raised on this appeal: (1) Is a tree planted solely on one person's property, but soon through growth standing partly on the boundary line common to his property

and an adjoining tract, a boundary-line tree? (2) Does the evidence sustain a finding that the tree constitutes a nuisance as defined by Minn. St. 561.01, justifying a mandatory injunction requiring its removal?

1-2. Defendants contend that, since the tree ultimately rested in part on the common boundary line, regardless of where it was originally planted, it has become a boundary-line tree and should be treated in accordance with the principles applicable thereto. Owners of boundary-line trees are considered tenants in common, neither tenant possessing the right to destroy the commonly held property without consent of the other. See, Meixner v. Buecksler, 216 Minn. 586, 13 N. W. (2d) 754; Cobb v. Western Union Telegraph Co. 90 Vt. 342, 98 A. 758; 1A Dunnell, Dig. (3 ed.) § 95d; 2 C. J. S., Adjoining Landowners, § 39; 1 Am. Jur. (2d) Adjoining Landowners, § 22.

There is a split of authority with regard to the question of whether a tree planted wholly on the property of one owner of land which subsequently grows into the common boundary of an adjoining owner becomes the common property of both owners. One view holds that trees standing on the boundary line of two adjoining owners are automatically their common property. The other view requires that in order for adjoining owners to become tenants in common of trees located on a common boundary such owners must treat the trees as their common property pursuant to an agreement or course of conduct. See cases cited in Annotation, 26 A. L. R. (3d) 1372.

The trial court in a memorandum attached to its findings of fact, conclusions of law, and order for judgment, and made a part thereof, stated:

"This Court is of the opinion that something more than the mere presence of a portion of a tree trunk on a boundary line is necessary to make the tree itself a 'boundary line tree' so as to bring it within the legal rule that it is owned by the adjoining landowners as tenants in common. The case of Meixner v.

Buecksler (supra) cited by defendants in support of their contention does contain the statement:

" 'The trees cut on the boundary line were the common property of both parties which neither could destroy without the consent of the other. Harndon v. Stultz, 124 Ia. 440; 100 N. W. 329.'

"However, in the Meixner case it was agreed that the trees were in fact boundary line trees, as may be readily seen from a statement made on page 589 of the Minnesota citation:

" 'An old fence fastened to the trees along this line had been in existence since about 1915. It did not exactly coincide with the new fence established by the survey, but *for the purposes of the trial it was agreed and the court so charged the jury*, that it had been in existence sufficiently long to establish the north-south boundary line between the properties.' (Underlining supplied.)"

In Harndon v. Stultz, 124 Iowa 440, 100 N. W. 329, quoted by this court in Meixner, the parties both intended that the hedge in question be a boundary-line hedge and jointly planted it. The Iowa court in that case defined line trees in the following words (124 Iowa 442, 100 N. W. 330):

"* * * 'Line trees'—trees standing directly on the boundary between lands of adjoining owners—are usually considered common property, which neither may destroy without the consent of the other."

The trial court referred to a definition of the term "bounded tree" contained in Black, Law Dictionary (Rev. 4 ed.) p. 233, as follows:

"A tree marking or standing at the corner of a field or estate."

The court below thereupon suggested that a single tree could mark a point where two lines meet as at a corner, but that it does not seem practical to have a single object, such as one tree, serve as a line or boundary when there is no intersection of lines. Defendants do not claim here that the tree in question marks a corner or other point, but do claim that it is a marker for a boundary.

We think the better reasoned authority and that which should be adopted by this court is that represented by decisions such as Rhodig v. Keck, 161 Colo. 337, 421 P. (2d) 729, 26 A. L. R. (3d) 1367. The Rhodig case was an action for malicious destruction of alleged boundary trees. The trees in question were initially planted on defendant's property but had grown onto plaintiffs' property. The court held that plaintiffs and defendant did not own the trees as tenants in common since there was no agreement or consent concerning ownership. The court set out a test to be used in determining common ownership: Trees are boundary-line trees if they were planted jointly, cared for jointly, or treated as a partition between adjoining properties. This was not the case in Rhodig, and since plaintiffs failed to show any agreement or consent of the parties that the trees should be treated as boundary-line trees, the court held that defendant as the legal owner of the trees had the right to remove them. Although a strong dissent expressed the views of two justices to the contrary, we are persuaded that the soundest rule is expressed in the majority opinion. Accordingly, we hold that something more than the mere presence of a portion of a tree trunk on a boundary line is necessary to make the tree itself a boundary-line tree—that whether a hedge, tree, or fence is in fact a boundary-line hedge, tree, or fence depends instead either upon the intention, acquiescence, or agreement of the adjoining owners or upon the fact that they jointly planted the hedge or tree or jointly constructed the fence.

3. An examination of the record fails to disclose any intention of the parties here, and certainly discloses no agreement by them, that the tree mark the boundary line between the properties.

The trial court in its memorandum refers to Sawicki v. Connecticut Ry. & Lighting Co. 129 Conn. 626, 30 A. (2d) 556, wherein a fence was constructed along a boundary line by one owner and extended somewhat upon the property of the adjoining owner. In an action brought for injuries received allegedly

from a defective condition in the fence, the adjoining owner was released from liability since the fence was not "a true boundary line fence or partition fence." 129 Conn. 635, 30 A. (2d) 560. It would thus appear that the mere fact of encroachment of a fence or tree or other object upon the land of an adjoining owner does not in and of itself make the object the common property of the two adjoining owners.

Thus, the only way the tree in the instant case could become the common property of plaintiffs and defendants would be by actual agreement. On the contrary, however, defendants have always claimed ownership and have maintained the tree. Therefore, it is the very essence of this lawsuit that the tree is where it is and that plaintiffs want it removed.

4. The evidence in this case shows that defendants, by planting and maintaining the tree in question, are obstructing the free use and enjoyment of plaintiffs' property, an encroachment constituting a nuisance as defined in Minn. St. 561.01.[1] See, Herrmann v. Larson, 214 Minn. 46, 7 N. W. (2d) 330; Joyce v. Village of Janesville, 132 Minn. 121, 155 N. W. 1067, L. R. A. 1916D, 426; Mead v. Vincent, 199 Okla. 508, 187 P. (2d) 994; Lemon v. Curington, 78 Idaho 522, 306 P. (2d) 1091, 64 A. L. R. (2d) 665; Shevlin v. Johnston, 56 Cal. App. 563, 205 P. 1087; Stevens v. Moon, 54 Cal. App. 737, 202 P. 961; Gostina v. Ryland, 116 Wash. 228, 199 P. 298, 18 A. L. R. 650; Buckingham v. Elliott, 62 Miss. 296, 52 Am. R. 188.

While it may be true that plaintiffs could resort to self-help by cutting the overhanging branches back to the property line and cutting out the offending roots, both § 561.01 and the over-

---

[1] Minn. St. 561.01 provides: "Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

whelming weight of decisional authority in the United States permit plaintiffs to bring suit to abate the nuisance and to recover for damages done to their property. Mead v. Vincent, *supra;* Shevlin v. Johnston, *supra;* Stevens v. Moon, *supra;* Gostina v. Ryland, *supra.* Plaintiffs did not resort to the former remedy due to its impracticability.

The law is clear that one cannot exercise his right to plant a tree in such a manner as to invade the rights of adjoining landowners. When one brings a foreign substance on his land, he must not permit it to injure his neighbor. Buckingham v. Elliott, *supra;* Mead v. Vincent, *supra;* Stevens v. Moon, *supra;* Parker v. Larsen, 86 Cal. 236, 24 P. 989.

Defendants have cited no case holding that one adjoining landowner may plant a tree on his boundary line, or in such a manner that it will grow across the boundary line, thereby forcing an involuntary tenancy in common of the tree upon his neighbor under which neither can remove or damage the tree without the consent of the other, notwithstanding that such tree is damaging his neighbor's property.

5. Since there is no adequate remedy at law for a continuing nuisance, injunction will lie if necessary to complete an effectual abatement of the nuisance. Colstrum v. Minneapolis & St. L. Ry. Co. 33 Minn. 516, 24 N. W. 255; Joyce v. Village of Janesville, *supra.* See, also, Meagher v. Kessler, 147 Minn. 182, 179 N. W. 732; State ex rel. Olson v. Guilford, 174 Minn. 457, 219 N. W. 770, 58 A. L. R. 607.

In nuisance cases, as in other cases involving injunctive relief, the extent of the relief to be granted lies largely within the discretion of the trial court, and our function on appeal is to determine whether such discretion has been abused. Robinson v. Westman, 224 Minn. 105, 29 N. W. (2d) 1, 174 A. L. R. 746.

In the instant case the lower court found that defendants' tree was a nuisance as defined in § 561.01. The court also found that removal of the roots which were causing the damage and of the portion of the trunk which extends onto plaintiffs' property

would endanger the life of the tree and weaken its stability, thereby endangering the homes of defendants, plaintiffs, and adjoining landowners in the event of storm or high wind. Since, pursuant to Meixner v. Buecksler, *supra,* the evidence must be considered in the light most favorable to the prevailing parties, this court should not disturb the lower court's findings on the issuance of the injunction.

6. Plaintiffs have sought review of the judgment in so far as it related to damages. While we have held that when a nuisance is established a plaintiff may be entitled to recover damages for property damage and physical suffering, discomfort, and inconvenience resulting from the nuisance, Millett v. Minnesota Crushed Stone Co. 145 Minn. 475, 177 N. W. 641, 179 N. W. 682, we nevertheless hold in the instant case that the findings on damages should not be disturbed since the equities were adequately balanced by the trial court and the extent of relief to be granted lies largely in its discretion.

We conclude that the trial court was entirely correct in its decision that the tree in this case was not co-owned by the parties; and that the tree in its condition at the time of trial constituted a nuisance within the meaning of § 561.01, for which the only solution is the removal of the tree.

The judgment of the trial court is affirmed.

Affirmed.

MR. JUSTICE SHERAN took no part in the consideration or decision of this case.