Alvarez v. Katz, No. 536-5-13 Cncv (Crawford, J., June 3, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                           CIVIL DIVISION
CHITTENDEN UNIT                                          DOCKET NO.: 536-5-13 Cncv

BRUCE and JANET ALVAREZ

v.

SHELDON M. KATZ and
CLAUDIA A. BERGER

DECISION ON MOTION FOR PRELIMINARY INJUNCTION

The court held an evidentiary hearing on 5/24/13 concerning plaintiff's motion for a preliminary injunction.

FINDINGS OF FACT

The parties are neighbors on Central Avenue in S. Burlington. They live in Queen City Park which is a very dense community of small homes which were originally summer camps. Over time these have been converted to year-round residences. The houses are close together on small lots.

For several years Mr. Katz and Ms. Berger have been engaged in litigation with the City of S. Burlington over the issuance of a permit for the construction of additions to their home. By decision dated March 7, 2013, the Environmental Court granted approval for the improvements with conditions not relevant here.

Separate and apart from the zoning issues is a dispute between the neighbors over the fate of a large sugar maple which stands just inside the Alvarez side of the boundary. It is about 65 years old and 65 feet fall. Its branches extend over both properties. Its root system extends under the ground of both properties.

The proposed improvements to the Katz/Berger residence include a two-story addition which is designed to fit within the existing footprint of their backyard deck. The tree extends into the air space where the addition is planned. The tree's roots extend beneath the deck at a depth of 6 to 18 inches. (The dripline from the outermost edge of the branches is approximately equal to the extent of the root system.) The tree is so close to the property line that fully one-half of the branches and one-half of the root system are on the defendants' side of the line.

In order to construct the rear addition, the defendants intend to build a concrete foundation which will remove one-half of the tree's root system. They also intend to remove all branches which extend across the property line. This will amount to cutting out one-half of the tree's growth.

Removing half the branches and half the root system will severely damage the tree. It is unlikely to survive this treatment. It will be vulnerable to rot and infection and it will become unstable in a high wind. If it falls down, it is most likely to fall onto the Alvarez property.

CONCLUSIONS OF LAW

The common law of trees in Vermont is uncomplicated and unsurprising. Trees which grow on a property owner's land belong to the property owner. The law recognizes that trees routinely spread across property lines, both in the air and underground. This is not considered a "trespass" since the long-term use of air and ground through trespass would give rise to adverse possession. Clearly the growth of a tree across property lines does not accomplish that. Tree owners, therefore, are permitted to allow their trees to grow into their neighbor's lots.

This permission has its limits. The adjoining property owner is entitled to cut the branches and the roots which enter his land. There are many cases, including a page and a half collected by defendants, which support this long-understood limitation on the tree owner's rights to plant a tree which grows over the property line. See *Cobb v. Western Union Telegraph Co.*, 90 Vt. 342, 344 (1916)("[W]here a tree stands wholly on the ground of one and so is his tree, any part of it which overhangs the land of an adjoining owner may be cut off by the latter at the division line.") This rule extends to roots, as well. See *Skinner*, 38 Vt. 115, 116 (1865) (noting that the defendant was probably correct in the proposition that he had the right to cut the roots and branches of a tree "to the division line so far as they penetrated or overhung his land"); see generally Annotation, *Encroachment of Trees, Shrubbery, or Other Vegetation Across Boundary Line*, 65 A.L.R. 4th 603, § 8 (1988) (describing adjoining owner's right to self help in removing roots or branches to the extent they encroach).[1]

Defendants seek to take the principle permitting the cutting of branches a step further to the removal of one half the limbs and roots. They propose to destroy their neighbor's tree because it stands in the way of their home expansion. Plaintiffs seek to limit the right to cut limbs and roots to cutting which does not endanger the health of the tree.

---

[1] Different rules apply in the so-called "boundary-line tree" case. As the Supreme Court has explained, "[a] tree standing upon the division line between adjoining proprietors so that the line passes through the trunk or body of the tree above the surface of the soil, is the common property of both proprietors as tenants in common." *Skinner v. Walker*, 38 Vt. at 116–17; see generally Annotation, *Rights and Liabilities of Adjoining Landowners as to Trees, Shrubbery, or Similar Plants Growing on Boundary Line*, 26 A.L.R. 3d 1372 (1969). The Vermont Supreme Court has declined to expand the definition of a "boundary-line tree" (or sometimes just "line tree") beyond situations where the property line actually passes through the tree's trunk:

> [E]ven if a tree standing with its trunk at the extreme limit of one's land, with the main roots extending immediately into the soil of the adjoining proprietor, should be regarded as so far substantially upon the line as to become common property, it cannot be so regarded in relation to the tree in question, situate[d] six feet from the division line.

*Skinner*, 38 Vt. at 122.

2

No Vermont case addresses whether this right to self-help is an absolute right, such that the holder of the right may cut so much of those parts of his neighbor's tree that the tree is effectively killed. Outside of Vermont, there is a split of authority regarding the application of the right to self-help:

> In most jurisdictions, the neighbor is entitled to remove those branches or roots by cutting them up to the property line, without being liable for damage to the plant . . . . Thus, if a neighbor removes roots invading his property from another's tree, and the weakening of the root system causes the tree to collapse more easily in the wind, in most states the neighbor is not liable. . . .
>
> In other states, notably California, the right to remove invading roots at the boundary line is not absolute: It is limited by the principle of reasonableness. Negligent or malicious removal, not occasioned by damage from the plant, is not permitted.

Powell on Real Property § 68.11[2][b] (1999) (footnotes omitted).

*Harding v. Bethesda Regional Cancer Treatment Center*, 551 So.2d 299 (Ala. 1989) is representative of the former view. In that case, there was evidence that one neighbor had cut encroaching roots, causing the tree to become more susceptible to wind damage. The court held that there were no facts to establish negligent excavation, and affirmed the entry of summary judgment on the tree owner's negligent excavation claim. Another authority notes that, as to the right to self-help, "[t]he neighbor may remove encroaching branches and roots, even if such action causes substantial damage to the tree." J. Smith & J. Hand, Neighboring Property Owners § 2:30 (WL updated Dec. 2012).

*Booska v. Patel*, 30 Cal. Rptr. 2d 241 (Cal. Ct. App. 1994), represents the California view. The trunk of a pine tree was entirely on Booska's land, but its roots extended into Patel's yard. Patel hired a contractor to excavate along the length of his yard and sever the roots of the tree, the result of which was that the tree died and Booska was required to remove it at his own expense. Booska sued Patel for negligence, destruction of timber, and trespass. Patel sought summary judgment on the grounds that he had an absolute right to sever the roots on his property without regard to any injuries to Booska's land. The Court of Appeal held that summary judgment was inappropriate because there were disputed factual issues to be resolved. *Id*. at 245. The court held that "whatever rights Patel has in the management of his own land, those rights are tempered by his duty to act reasonably." *Id*. The California court quoted a variety of authorities for that proposition, including the following passage from Prosser and Keeton regarding the rights and duties of a landowner:

3

> He has a privilege to make use of the land for his own benefit, and according to his own desires, which is an integral part of our whole system of private property; but it has been said many times that this privilege is qualified by a due regard for the interests of others who may be affected by it. The possessor's right is therefore bounded by principles of reasonableness, so as to cause no unreasonable risks of harm to others in the vicinity.

*Id*. at 244 (quoting W. Keeton, et al., Prosser & Keeton on the Law of Torts § 57, at 386 (5th ed. 1984)). Dicta in *McCrann v. Town Plan Zoning Commision of the Town of Bloomfield* also suggests that there might be a limit to the right of self-help in Connecticut. 282 A.2d 900, 906 (Conn. 1971) (noting the right of self-help, but remarking that "[t]his does not mean, of course, that complete disregard for the welfare of the trees is permitted").

In New York State, the leading case is *Fliegman v. Rubin*, WL 23119691 at *2 (N.Y. App. Div. Nov. 20, 2003) in which the Appellate Division held that the right to trim branches was limited and did not permit the "destruction or injury to the main support system of the tree." As plaintiffs point out in their memorandum, *Fliegman* has been cited twice by other New York courts, including the Appellate Division, for the rule that the right to trim overhanging branches does not authorize the destruction of the tree.

In New Jersey, the Supreme Court held that plaintiffs could recover damages for the loss of their hedge by an adjoining landowner who cut away the encroaching portion and thereby destroyed the hedge. *Wegener v. Sugarman*, 138 A. 699, 700 (N.J. 1972).

In the absence of guidance from the Vermont Supreme Court, the trial court must fashion a common rule for the purposes of this case. In doing so, the court must strike a balance between the right of the tree owner to a healthy tree and the right of the adjoining owner to use his property as he or she sees fit. The court concludes that the rule in California, New York, and New Jersey which limits the right of an adjoining landowner to cut encroaching trees and hedges to actions which do not harm the health of the tree is a better rule than an absolute privilege to cut encroaching branches and roots without regard to the health of the tree. A damaged tree is dangerous. A tree which has been destroyed is a great loss to its owner. The adjoining property owner's right to maintain the status quo is protected by his right to trim and cut the incremental growth if it goes where he does not wish. All he has lost under the California and New York rule is the right to cut at once so deeply and irreversibly into the tree that its health is compromised.

The court recognizes that in a few cases such as this one involving homes built very close to property lines in a city setting, the court's rule may have the unintended effect of limiting the direction in which one neighbor can expand his home. He or she cannot build in such a way that the neighbor's tree is destroyed. Construction within the dripline of existing trees will have to proceed without fatal damage to the tree. Based on the testimony received to date, it appears unlikely that the rear addition can be built without killing the tree. This is a serious consequence for the defendants, but it is the necessary result of a rule which recognizes both the right of the

defendants to trim the overhanging limbs and the right of the plaintiffs to protect the health of the tree and the safety of their property.

Because of the way the court anticipates Vermont law will develop, it is clear that the plaintiffs have met their burden of proof on the issue of likelihood of success.

In order to obtain preliminary injunctive relief, plaintiffs must also establish a potential injury for which money damages are inadequate. The court rejects defendants' argument that trees have a monetary value and that therefore the loss of a tree is better addressed through a damages award. Trees take a long time to establish themselves. They provide shade and protection which cannot be replaced once they are removed. A mature tree 65 foot cannot be replaced with another specimen in any practical way. The tree has value to its owner which cannot be measured by the replacement cost of a nursery specimen or its value as cordwood. The court is satisfied that the plaintiffs have demonstrated a showing of harm which is not reasonably addressed through the award of money damages.

Defendants make several other arguments which will not detain the court for long. The Environmental Court decision includes no ruling about the removal of the tree or the rights of the parties in that respect. With no ruling on these issues, there is no res judicata effect.

The availability of damages for timber trespass has very little impact on this case. There is no question that the tree belongs to the plaintiffs, that it overhangs the defendants' property, and that defendants wish to cut it back. This is not a case in which anyone has trespassed on the other's property or cut a tree without permission.

Both parties agree that the tree is not a shared "boundary tree" and that the special rules prohibiting the cutting of a boundary tree do not apply.

The court has not based its ruling on the requirements of the S. Burlington Land Development Regulations. Although the regulations prohibit the cutting of a tree the size of the tree involved in this case without site plan approval, the court has not based its decision on the potential zoning violation. For the reasons raised by defendants, this is not the correct court for the enforcement of the zoning laws.

CONCLUSION

The court grants the plaintiffs' motion for a preliminary injunction and will issue the injunction at this time. The next step in the case will be to hear defendants' motion to dismiss which is not yet ripe for decision.

Dated: May 31, 2013                                         _____

Geoffrey Crawford,
Superior Court Judge