2015 VT 86











Alvarez v. Katz and Berger
(2014-385)

 

2015 VT 86

 

[Filed 19-Jun-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 86
 
 


 


 
 
 No. 2014-385
 
 


 


 
 
 Bruce Alvarez and Janet Alvarez
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
  
 
 
  
 
 
 
 
 Sheldon M. Katz and Claudia
 Berger
 
 
 April Term, 2015
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Dennis
 R. Pearson, J.
 
 
 
 
  
 
 


Norman Williams and David A. Boyd of Gravel & Shea PC,
Burlington, for Plaintiffs-Appellees.

 

Claudia Berger and Sheldon M. Katz, Pro Ses,
South Burlington, Defendants-Appellants.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund,
Robinson and Eaton, JJ.

 

 

¶ 1.            
EATON, J.   New England poet Robert Frost once observed
that “[g]ood fences make good neighbors.”  Robert Frost,
Mending Wall, in North of Boston (Edward Connery Latham
ed., 1977).  The same, it appears, cannot be said of good trees.
 This is a case of protracted litigation, with extensive motion practice,
between neighbors over a maple tree.  For the reasons stated herein, we
vacate the injunction and remand to the trial court for entry of judgment in
favor of appellants Claudia Berger and Sheldon Katz and for determination of
the form of declaratory relief in their favor regarding removal of the
encroaching roots and branches from the Berger/Katz property.

¶ 2.            
Berger and Katz own property at 54 Central Avenue in South Burlington in
the Shelburne Bay area.  The Alvarezes own the adjoining lot just to the
north at 52 Central Avenue.  The property is part of a residential
neighborhood consisting of shallow lots with a limited view of Lake Champlain.

¶ 3.            
The maple tree in question is about sixty-five years old and stands
about sixty-five feet tall.  The trunk or stem of the tree is located
entirely on the Alvarez property, approximately two feet from the property
line.  Although the superior court considered the tree to “effectively” be
on the property line, the parties agree that the property line does not pass
through the trunk of the tree, but lies to the south of the tree trunk.
 Further, there is no evidence that the tree was either planted as, or
intended to be depictive of, the property boundary.  When the Alvarezes
bought their property approximately twenty-five years ago, the tree was already
about one foot in diameter at the base.  Approximately half of the
branches and roots from the tree now cross the property boundary and encroach
onto the Berger/Katz lot.  Some roots extend under the existing deck on
the Berger/Katz home.

¶ 4.            
For several years Berger and Katz have sought to expand their home by
constructing a two-story addition on the rear which would occupy roughly the
same existing footprint as the house and deck at present.  Berger and Katz
have received the necessary permits for construction of the addition.  The
plans for the construction of the addition to the Berger/Katz residence would
necessitate cutting the roots and branches that are encroaching onto their
property.  This could encompass up to half of the tree’s roots and branches.

¶ 5.            
Efforts to amicably resolve the problem of the maple tree in light of
the planned Berger/Katz addition went for naught.  In 2013, when Berger
and Katz considered taking unilateral action to trim the tree’s roots and
branches, the Alvarezes filed for and received a temporary injunction, and
later a permanent one.  The superior court found it more likely than not
that removal of 50% of the tree’s roots and branches as contemplated would
result in the premature death of the tree, perhaps within five years and
probably within ten from the time of cutting.  The final injunction barred
the trimming of more than 25% of the roots and branches of the tree.

¶ 6.            
The trial court granted the temporary injunction, employing what it
dubbed as the “urban-tree rule.”  The moniker attached to this theory
stemmed from the trial court’s belief that California, New York, and New Jersey
place restrictions on the right of an adjoining landowner to trim roots or
branches intruding onto their land from a neighbor’s property due to the urban
nature of those states.  Under the “urban-tree rule,” as described by the
trial court, trimming the roots or branches of an encroaching tree may be
proscribed if the trimming will destroy the tree.  Although the judge
hearing the permanent injunction questioned the validity of the “urban-tree
rule,” he felt it improper to apply a different legal analysis, relying upon it
as the “law of the case.”

¶ 7.            
This appeal from the permanent injunction followed.  We review the
superior court’s decision to grant injunctive relief for an abuse of
discretion.  Obolensky v. Trombley,
2015 VT 34, ¶ 18, ___ Vt. ___, ___ A.3d ___. 
“We will not reverse the trial court’s decision if the record below reveals any
legal grounds that would justify the result.”  Alberino v.
Balch, 2008 VT 130, ¶ 7, 185 Vt. 589, 969 A.2d 61
(mem.).

¶ 8.            
Appellants allege the superior court erred in granting an injunction
because the common law allows for an absolute right of a landowner to trim
intruding branches and roots regardless of the impact on the offending tree;
because there is no showing that the cutting would cause irreparable harm
sufficient to support an injunction; and because injunctive relief results in a
taking of appellant’s property without compensation.  Because we reaffirm
Vermont’s long-standing right of a property owner to trim branches and roots
from an encroaching tree without regard to the impact that such trimming may
have on the health of the tree, and vacate the injunction on that basis, we do
not reach appellant’s other arguments.

¶ 9.            
Vermont has long recognized ownership of property to include the
ownership of that which is below the ground and that which is attached
overhead.  Stratton v. Lyons, 53 Vt. 641, 643 (1881)
(“[W]hoever is in possession of the surface of the soil is in law deemed to be
in possession of all that lies underneath the surface.  Land includes not
only the ground or soil, but everything attached to it, above or below.”).
 The right of a property owner to trim non-boundary trees back to the
property line cannot be gainsaid.  This right has been clear for at least
the last 100 years.  Cobb v. W. Union Tel. Co.,
90 Vt. 342, 344, 98 A. 758, 759 (1916) (“[I]t is a sound principle that
where a tree stands wholly on the ground of one and so is his tree, any part of
it which overhangs the land of an adjoining owner may be cut off by the latter
at the division line.”).  The superior court considered this case to be
one of first impression in Vermont because of the anticipated adverse—and
likely fatal—effect the proposed root-and-branch cutting would have on the
encroaching tree, distinguishing this situation as an
exception to the Cobb rule.  The attempt to distinguish Cobb
is inconsistent with its holding.  Further, the “urban-tree rule” does not
enjoy the support attributed to it by the superior court.

¶ 10.         As a
starting point, the law recognizes a distinction in treatment between trees that
are on the boundary line (“line trees”) and those on one side of a property
line that intrude via branches, roots, or both onto neighboring property.
 A tree standing on the division line between adjoining proprietors, such
that “the line passes through the trunk or body of the tree above the surface
of the soil, is the common property of both proprietors as tenants in common.”
 Skinner v. Wilder, 38 Vt. 115, 116-17
(1865).  Neither may hew down his part of the tree to the property
line and destroy the part belonging to the other.  Id.
at 117.

¶ 11.         The
property line here does not pass through the trunk or body of the tree, a
distinction which affects the rights each party has concerning the tree.
 The superior court was incorrect that this tree is “effectively” a line
tree.  A line tree enjoys clarity under the law; either the property line
passes through the stem of the tree or it does not.  The former is a line
tree, the latter is not.  Absent the property line passing through the
tree trunk, it cannot be considered a “line tree,” and thus it is not owned by
the parties as tenants in common.  Id. at 116-17.
 The tree belongs to the Alvarezes and is not commonly owned.

¶ 12.         The
superior court’s determination that this case is one of first impression
requires an exceptionally narrow reading of Cobb.  Cobb
involved the trimming of two trees belonging to Cobb but encroaching into the
right of way of the Rutland Railroad.  The trees were on the Cobb
property, a short distance from the right-of-way line, with branches from both
trees and the main trunk of one overhanging into the right of way.  At the
direction of the railroad, agents of Western Union cut off the branches of one
tree and the main trunk of the other where they overhung into the right of way.
 No trespass onto Cobb’s land occurred during the cutting.

¶ 13.         In
considering Cobb’s claim for damages for the cutting of his trees, this Court
stated: “we are satisfied that it is a sound principle that where a tree stands
wholly on the ground of one and so is his tree, any part of it which
overhangs the land of an adjoining owner may be cut off by the latter at the
division line.”  Cobb, 90 Vt. at 344, 98 A. at 759
(emphasis added).  Cobb did not suggest any limitation on the right
to cut encroachments—in fact, quite the opposite is true: any
encroaching part of the tree may be removed.  Id.  The Cobb
Court recognized the right to cut off the main trunk of one of the trees where
it entered the right of way.  Any limitation in Cobb to “non-fatal”
cutting as construed by the court below is not supported by the language or
facts of that case.

¶ 14.        
In the ninety-nine years since Cobb was decided, our legislature
has not seen fit to modify its holding by enacting any statute imposing a
limitation on the cutting of encroaching trees.  The right to cut
encroaching trees where they enter the land of another, without regard to the
impact on the encroaching tree by such cutting, is well-established under
Vermont law.

¶ 15.         Appellants
assert that every jurisdiction to consider the issue has universally recognized
the Cobb rule of self-help by permitting cutting of the encroaching tree
to the extent of encroachment.  While courts have imposed limitations in a
few cases, the Cobb rule enjoys extremely widespread support.  See, e.g., Harding v.
Bethesda Reg’l Cancer Treatment Ctr., 551 So. 2d 299,
302 (Ala. 1989); Cannon v. Dunn, 700 P.2d 502, 503
(Ariz. Ct. App. 1985); Bonde v. Bishop, 245 P.2d
617, 620 (Cal. Dist. Ct. App. 1952); McCrann v. Town Plan &
Zoning Comm’n, 282 A.2d 900, 906 (Conn. 1971); Sterling v.
Weinstein, 75 A.2d 144, 148 (D.C. 1950); Gallo v. Heller,
512 So. 2d 215, 216 (Fla. Dist. Ct. App. 1987) (per
curiam); Whitesell v. Houlton, 632 P.2d 1077, 1079 (Haw.
Ct. App. 1981); Lemon v. Curington, 306 P.2d 1091, 1092
(Idaho 1957); Toledo, St. Louis and Kan. City R.R. Co. v. Loop,
39 N.E. 306, 307 (Ind. 1894); Pierce v. Casady,
711 P.2d 766, 767 (Kan. Ct. App. 1985); Melnick v. C.S.X.
Corp., 540 A.2d 1133, 1135 (Md. 1988); Michalson v.
Nutting, 175 N.E. 490, 491 (Mass. 1931); Holmberg v.
Bergin, 172 N.W.2d 739, 744 (Minn. 1969); Jurgens v.
Wiese, 38 N.W.2d 261, 263 (Neb. 1949); Wegener v.
Sugarman, 138 A. 699, 700 (N.J. 1927); Loggia v. Grobe,
491 N.Y.S.2d 973, 974 (Dist. Ct. 1985); Jones v. Wagner,
624 A.2d 166, 168 (Pa. Super. Ct. 1993); Rosa v.
Oliveira, 342 A.2d 601, 605 (R.I. 1975); Lane v. W.J.
Curry & Sons, 92 S.W.3d 355, 364 (Tenn. 2002); Gostina v.
Ryland, 199 P. 298, 301 (Wash. 1921).  It is
clear, however, that the right to self-help extends only to the property line.
 Under the self-help remedy, a landowner subject to encroachment may not
cross the property line and cut or remove that part of a tree or hedge which
has not encroached.  Wegener, 138 A. at 700.

¶ 16.         On
the other hand, what the superior court dubbed the “urban-tree rule” has
received limited support.  One California decision imposes a duty to act
reasonably in exercising the self-help remedy.  Booska v.
Patel, 30 Cal. Rptr. 2d 241, 245 (Ct. App. 1994).
 Without discarding the self-help rule, Booska holds that in
exercising it one must act reasonably toward the neighboring property owner.
 Id.

¶ 17.         An
unreported New York decision from a lower court limits the right of self-help
removal of encroaching branches and roots to situations where the exercise of
that right does not destroy or injure the main support system of the tree.
 Fliegman v. Rubin, 781 N.Y.S.2d 624
(N.Y. App. Term 2003) (unreported).  Fliegman has
received scant support since its issuance.

¶ 18.         Examination
of the common law reveals that the right to cut encroaching boughs and roots
historically counterbalanced a landowner’s right to grow shade trees on his
land, regardless of the impact those trees may have in casting shade or
encroaching upon the neighboring property.

As against
adjoining proprietors, the owner of a lot may plant shade trees upon it, or
cover it with a thick forest, and the injury done to them by the mere shade of
the trees is damnum absque injuria [loss without injury].  It is no
violation of their rights.  We see no distinction in principle between
damage done by shade, and damage caused by overhanging branches or invading
roots.  The principle involved is that an owner of land is at liberty to
use his land, and all of it, to grow trees.  Their growth naturally and
reasonably will be accompanied by the extension of boughs and the penetration
of roots over and into adjoining property of others. . . .

  The
neighbor, [though] without right of appeal to the courts if harm results to
him, is, nevertheless, not without remedy.  His right to cut off the
intruding boughs and roots is well recognized.  His remedy is in his own
hands.  The common sense of the common law has recognized that it is wiser
to leave the individual to protect himself, if harm results to him from this
exercise of another’s right to use his property in a reasonable way, than to
subject that other to the annoyance, and the public to the burden, of actions at
law, which would be likely to be innumerable and, in many instances, purely
vexatious.

Michalson,
175 N.E. at 490-91 (quotations and citations omitted).  Thus,
at the common law, there was no claim for damages caused by encroaching roots
or branches.  The remedy was one of self-help, allowing the cutting of
roots and branches to the extent of encroachment.

¶ 19.         Where
other jurisdictions have departed from the common-law rule and allowed actions
for damages as a result of encroaching roots or branches, they have generally
relied upon nuisance principles.  See, e.g., Curry
& Sons, 92 S.W.3d at 360-63
(surveying approaches from across the country regarding the availability of
remedies beyond self-help).  Even where such actions have been
permitted, those jurisdictions continue to recognize the right to self-help.
 See, e.g., id. at
360 (“Although the jurisdictions uniformly agree that self-help is an
appropriate remedy, they are divided on the availability of any remedy beyond
self-help.”).

¶ 20.         Of
course, the issue of whether a nuisance claim might exist for the encroachment
of roots and branches from the Alvarezes’ tree is not presently before the
Court.  Rather, this case presents the competing interests of neighboring
property owners.  On the one hand, Berger and Katz have an interest in
using their land, which they have purchased and upon which they pay taxes, as
they see fit, within permissible regulations, free from limitations imposed by
encroaching roots and branches from the neighbors’ tree, which they did not
invite and for which they receive no benefit.  The Alvarezes seek to
restrict the use of the Berger/Katz property by preventing the removal of
branches and roots on land that is not theirs and for which they have given nothing
of benefit to Berger and Katz for suffering the encroachment.  On the
other hand, the Alvarezes wish to continue to enjoy their tree, which has been
there for many years, without placing its viability in peril due to the
construction that Berger and Katz wish to undertake.

¶ 21.         The
law in Vermont, and overwhelmingly from other jurisdictions, resolves these
competing interests in favor of the right of Berger and Katz to enjoy the use
of their land by allowing them the right to remove the encroaching roots and
branches.  Potential limitations requiring that such removal be done
reasonably and not negligently are not before the Court here.  If the
Alvarezes had the right to have their tree encroach onto the Berger/Katz
property, the obvious next question would be to what extent the encroached-upon
property owner must suffer such an encroachment.  We would be hard-pressed
to create a workable rule which would serve to limit encroachments in number,
extent, or distance that a property owner must tolerate from neighboring trees
before allowing the property owner to exercise self-help.  Although we are
cognizant that on some occasions the exercise of self-help may result in the
immediate or eventual loss of an encroaching tree, given the long-recognized
rule in Vermont and its widespread support elsewhere, we decline to depart from
the common-law rule in favor of the approach adopted by the superior court.

¶ 22.         The
Alvarezes also argue that 13 V.S.A. § 3606 prevents Berger and Katz
from “destroying” the maple tree.  This timber statute did not create a
cause of action, but rather allowed cumulative damages for injuries actionable
at common law.  Vaillancourt v. Dutton, 115 Vt. 36, 38,
50 A.2d 762, 764 (1947) (citing Hathaway v. Goslant,
77 Vt. 199, 59 A. 835 (1905)).  This statute is based upon
trespass.  Id. at 37-38, 50 A.2d at 763-64
(noting that statutory modification of common-law action of trespass does not
introduce a new cause of action).  The Alvarezes do not allege that
trespass occurred here, and the timber statute creates no bar to the remedies
available to Berger and Katz under the common law.

¶ 23.         The
superior court issued both a temporary and permanent injunction, finding that
damages for wrongful injury to or destruction of the tree, if proven, would not
provide an adequate remedy due to the difficulty of replacement and the value
to the landowner.  Because of our disposition of this case we need not
reach this issue.

¶ 24.         Lastly,
Berger and Katz seek a declaration that the Alvarezes must either remove the
offending branches and roots or compensate Berger and Katz for doing so.
 Consistent with this opinion, Berger and Katz are entitled to the
declaratory relief requested.  We leave to the trial court upon remand the
task of determining the form of declaratory relief concerning removal of the
encroaching roots and branches.

The decision of the superior
court, civil division granting injunctive relief is reversed.  The
injunction is vacated and the case remanded for entry of judgment in favor of
Berger and Katz and for determination of the form of declaratory relief in
their favor regarding removal of encroaching roots and branches.

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice