EDMUND SKINNER *v.* SAMUEL N. WILDER.*

*Trees.    Division Line.    Tenant in Common.*

The plaintiff's apple tree stood six feet from the division line between the lands of
the plaintiff and defendant, with its branches extending over and its roots into
the land of the defendant. *Held,* that the tree and its products were the sole
property of the plaintiff, and the defendant was liable in either trespass *qu. cl.
fr.* or trover for picking and converting to his own use the apples on the branches
overhanging his land.

*It seems* that a tree and its product is the sole property of him on whose land it is
situated, and its location and property should be determined by the position of
the trunk or body of the tree above the soil, rather than by the roots within or
branches above it.

TRESPASS *qu. cl. fr.*, with a count in trover. Plea, the general
issue, and trial by jury, September Term, 1863, BARRETT, J., pre-
siding.

Upon the plaintiff's offer to prove the facts set forth in the opin-
ion, the court held, *pro forma,* that if these facts were proved the
plaintiff would not be entitled to recover, and directed a verdict for
the defendant,—to which the plaintiff excepted.

*Butler & Wheeler,* for the plaintiff.

*Charles N. Davenport* and *E. E. Kellogg,* for the defendant.

The opinion of the court was delivered by

PECK, J.   In this case it appears that the plaintiff planted or set
apple trees on his own land six feet from the division line between
his land and the defendant's land; the trees grew until the roots ex-
tended into, and the branches overhung, the defendant's land. The
question is whether the defendant is liable either in trespass on the
freehold or in trover for picking, carrying away and converting to
his own use, the apples growing on the branches overhanging his own
land.

Each party claims to be the sole owner of the fruit in question;
the plaintiff upon the ground that he is the owner of the tree, and
the defendant upon the ground that the branches and the fruit thereon
overhung his land, and that in virtue of his ownership of his
land he owns everything above it.   It is true that whoever owns

---

*This case was heard at the February Term, 1864, and decided February Term,
1865.

land owns above it to an indefinite height,—that is, he owns the space above, or rather, has the right to appropriate it to his use, so that no one can lawfully obstruct it to his prejudice. But it is not true in all cases that the owner of land owns everything upon or above it, though placed there wrongfully by another. Certainly in case one's personal property is wrongfully placed upon the land of another, the property in the thing is not thereby changed. The owner of the soil has his remedy by action for damages, and he may remove it; but he does not become the owner. If a man build a house on his own land with the eaves and windows above the surface of the ground projecting over the land of the adjoining proprietor, he is liable to an action for damages, and generally, at least under some circumstances, the adjoining proprietor may remove the obstruction as a nuisance; but the material removed does not become his property. In order to justify the act of removal in such case, he must allege that the obstruction was wrongfully encumbering his premises, and that he therefore removed it, doing no unnecessary damage. If it appear that he unnecessarily destroyed it, or appropriated it to his own use, the justification fails. This shows that the right of removal does not depend on ownership, but on his right to protect his own premises from invasion. The defendant therefore cannot be regarded as the owner of the apples merely because the branches on which they grew were wrongfully encumbering his ground. Suppose the defendant's counsel is correct, as he probably is, in the proposition that the defendant had the right to cut the roots and branches of the tree to the division line so far as they penetrated or overhung his land, upon the ground that they were unlawfully encumbering his premises; this justification does not extend to the carrying away and converting the apples upon such branches to his own use, unless he was the owner of the apples, either solely, or in common with the plaintiff. The title to the apples depends upon the title to the tree, and the defendant was not the sole owner of any part of the tree. The defendant is liable in either count in the declaration unless he had some property in the tree.

The remaining ground of justification on which the defendant relies is, that he was tenant in common with the plaintiff of the tree, and consequently of its product. A tree standing upon the division

Skinner *v.* Wilder.

line between adjoining proprietors so that the line passes through the trunk or body of the tree above the surface of the soil, is the common property of both proprietors as tenants in common. This is not denied. This is another instance where the maxim that he who owns land owns to the sky above it, is qualified and made to give way to a rule of convenience, more just and equitable, and more beneficial to both parties. To hold in such case that each is the absolute owner of that part of the tree standing on or over his own land, would lead to a mode of division of the tree when cut, that would be impracticable, and give the right to one to hew down his part of the tree to the line and thereby destroy the part belonging to the other. The rule is therefore settled that in such case the parties are tenants in common. It is claimed that the same principle applies to this case, because some of the roots of the tree extend into the defendant's land whence it draws part of its support. *Waterman* v. *Soper*, 1 L'd Raym. 737, is cited in support of this proposition. In that case it is said that it was ruled at *nisi prius*, "that if A. plants a tree upon the *extremest limits* of his land, and the tree growing extends its root into the land of B. next adjoining, A. and B. are tenants in common of the tree. But if all the root grows into the land of A., though the boughs overshadow the land of B., yet the branches follow the root and the property of the whole is in A." There is an anonymous case in 2 Roll. 255, in which it is held that if a tree grows in a hedge which divides the land of A. and B., and the roots take nourishment of both their lands, they are tenants in common of it. It is evident that neither of those cases is necessarily decisive of the case at bar, and that they do not control it, unless the principle is fairly deducible from them that the adjoining proprietors are tenants in common of a tree in all cases where the roots penetrate the soil of both, without reference to the distance of the tree from the division line. We think this broad principle is not intended to be established in those cases. In the first, *Waterman* v. *Soper*, it is a condition that the tree be planted on the *extremest limit* of the land, so that growing it extends its roots into the land of the adjoining proprietor. A tree thus planted must almost inevitably in its subsequent growth extend its body more or less upon the dividing line. In the other case the tree grew in the hedge which divided the

land of the two proprietors.   Such a division hedge in England, like division fences here, is generally *prima facie* the common property of both, and the tree may have been treated as constituting part of the hedge, but if not, it must have stood in close proximity *to*, if not *upon* the line.   These cases may reasonably be supposed to have been decided upon the ground that the trees stood substantially upon the line, and not solely on the ground that the roots extended into the land of each.   This principle of tenancy in common in a tree merely because some of its roots extend into the land of the adjoining proprietor, regardless of the location of the tree, would be attended with so much inconvenience, uncertainty and embarrassment in its practical application, that it furnishes a strong argument against the construction of these cases contended for by the defendant, as well as against recognizing such a principle unless the authorities lead to that result, or the purposes of justice imperiously demand it.   There is at first view an apparent equity in the proposition that the proprietor from whose land a tree draws a portion of its support, should have some benefit in return, but to allow him an equal right to the tree and its fruits because a single root penetrates his soil, is quite as unjust as to deny him any right in the tree whatever. If he is tenant in common, what proportion does he own?   If his interest is in proportion to the portion of nourishment the tree draws from his land how is the fact to be ascertained?   Suppose the division line runs through a grove, a fruit yard, a nursery of trees or a forest, and this rule is adopted, there might be a belt of land rods in width, on which the parties would be tenants in common of more or less of the trees.   How is each to know or ascertain what he owns solely, and what in common, and in what proportion, especially as the rights of the parties would be constantly changing by the growth and consequent extension of roots across the division line.   Principles of law and rules of property must be such as are capable of practical application to business affairs.   But suppose these cases go to the extent the defendant. claims, then what are the authorities opposed to them?

In *Masters* v. *Pollie*, 2 Roll. 141, it was adjudged that if a tree grows in A.'s close and roots in B.'s, yet the body of the tree being in the soil of A., all the residue of the tree belongs to him also.

This case is directly in point to show that the plaintiff in the case before us is the sole owner of the tree, and it is directly opposed to *Waterman* v. *Soper*, upon the construction put upon that case by the defendant's counsel; and also opposed to the anonymous case above cited, 2 Roll. 255, unless that case is to be interpreted as already stated; but if those two cases stand on the ground heretofore stated, then there is no such conflict. *Miller* v. *Fondyce*, Poph, 161, 163, and *Norris* v. *Baker*, 3 Bulst. 178, seem to support the principle of *Masters* v. *Pollie*, relied on by the plaintiff's counsel. The plaintiff's counsel relies on *Holden* v. *Coates*, 22 E. C. L. 264. The facts in that case were much stronger in favor of a tenancy in common than in this case, and not so clearly in favor of an entire title in the party on whose land the body of the tree stood, as in this case. The trunk of the tree stood in the defendant's land, and the lateral or spur roots grew in the land of both parties. The plaintiff gave evidence to show that there was no tap root, and that all the principal roots from which the tree derived its main nourishment were those which grew in the plaintiff's land. The defendant's evidence was that there was a tap root growing entirely in his land, and that the spur roots grew alike in the land of each party. The action was trespass for cutting the tree. LITTLEDALE, J., speaking of *Masters* v. *Pollie* and *Waterman* v. *Soper*, says, " I remember when I read these cases I was of opinion that the doctrine in the case of *Masters* v. *Pollie* was preferable to that in *Waterman* v. *Soper*, and I still think so." So far as this expression of opinion goes, the case makes for the plaintiff; but as the case ultimately turned, this point can hardly be said to have been decided. Had the court followed either of these cases, a verdict would have been directed. But the court, after telling the jury not to decide the case upon the relative proportion of nourishment derived by the tree from the soil of the plaintiff and defendant, left the case to the jury to find from the situation of the trunk of the tree above the soil, and of the roots within it, on whose land the tree was first planted, and to render their verdict accordingly; telling them if they could not find that fact, he would then give them directions on the questions they would then have to consider. This view is also in favor of the plaintiff in the case at bar, because the case shows that the plaintiff planted the tree on his

own land, six feet from the division line. The jury in that case,
however, reported that they could not tell on whose land the tree did
first grow; and a verdict was taken for the defendant by consent, on
some terms agreed on between the parties; so that the case can
hardly be said to be of much authority as a decision. But *Lyman*
v. *Hale*, 11 Conn. 177, is identical with the present case in principle,
and in its facts also, except the tree in that case was two feet nearer
the dividing line than in this case. The court in that case, on full
discussion and review of the authorities, decided that upon reason,
principle, and weight of authority, the tree and the fruit growing on
the branches overhanging the defendant's land, were the sole prop-
erty of the plaintiff on whose land the body of the tree stood, and
that the defendant was liable in trespass for gathering and convert-
ing to his own use the fruit on such overhanging branches. The
elementary books cited are in conflict, all referring to *Masters* v. *Pol-
lie*, or *Waterman* v. *Soper*; some following one and some the other
of these cases.

There seems to have been the same conflict of opinion in the civil
law on this subject, notwithstanding the law of vicinage and the
rights and duties of adjoining proprietors, were by the Roman code
defined with much more particularity than by the common law.
There is a passage in the Institutes of Justinian that, as it is gene-
rally translated, would seem to favor the doctrine of *Waterman* v.
*Soper*, as claimed by the defendant. After stating that if one sets
his plant in another's ground, it becomes the property of the owner
of the land where it is set, after it has taken root, the passage pro-
ceeds as follows: "So that if the tree of a neighbor borders so
closely upon the ground of Titius as to take root in it, and be wholly
nourished there, we may affirm that such tree is become the property
of Titius; for reason doth not permit that a tree should be deemed
the property of any other than of him in whose ground it hath
rooted; therefore if a tree planted near the bounds of one person,
shall also extend its roots into the land of another, it will become
common to both." Instit. 2, 1, 31, (Coop. Just. 79). This passage
may have reference only to a tree so near the line as to be regarded
as standing substantially upon the line. But however this may be,
it is to be observed that the civil law in the days of Rome required a

boundary of five feet to be left between farm and farm, or rather between the trees of the two adjoining proprietors, except in the case of an olive or a fig tree, where a space of nine feet was required. It is evident that the passage above quoted has reference to trees set within the prohibited distance from the extreme boundary line. There might be more reason in saying if a party set his tree on the extreme limit of his land, in violation of express law, that the adjoining proprietor should become tenant in common of the tree, than if no such legal regulation existed, or if the tree was set no nearer the division line than the law prescribed. On the other hand it is laid down in another book of the civil law, that such tree extending its roots into the land of the adjoining proprietor, is nevertheless the property of him in whose land it had its origin. Dig. 47, 7, 6, 2. This is the rule recognized by LITTLEDALE, J., in *Holden* v. *Coates*. This rule generally would lead to the same result as the rule that the tree belongs to him on whose land the trunk or body of the tree is situated; as a tree would naturally be supposed to grow where it was set or planted. Yet in the case last cited the jury were unable to find on whose land the tree was planted, although the trunk of the tree was on the defendant's land, because the court told the jury to determine it from the evidence as to the situation of the trunk of the tree above the soil, and of the roots within it. DOMAT in treating this subject, attributes no consequence to the setting of a tree nearer the division line than the law allows, except that the party thus offending may be compelled to remove it and pay the damages. He does not intimate that the tree thereby becomes the common property of the two adjoining proprietors. 1 Domat Civil Law, 589, Tit. 6, § 1, Art. 2; 591, § 2, Art. 1; Cooper's Justinian, 460, notes. The civil law on the whole is rather in favor of the plaintiff, and is more in accordance with *Masters* v. *Pollie.* The civil code of France regulates the subject by declaring the boundary hedges and the trees within them, with some exceptions, common property. The civil law cannot be referred to as authority, and can have no bearing unless for its reason, and then only on a question not settled by the common law.

On the whole we think the weight of authority, reason and analogy, as well as convenience, is in favor of the principle that a tree

and its product is the sole property of him on whose land it is situated; and that, considering the necessary uncertainty of evidence as to the location and extent of the roots of a tree, its location and property should be determined by the position of the trunk or body of the tree above the soil, rather than by the roots within or branches above it. But even if a tree standing with its trunk at the extreme limit of one's land, with the main roots extending immediately into the soil of the adjoining proprietor, should be regarded as so far substantially upon the line as to become common property, it cannot be so regarded in relation to the tree in question, situate six feet from the division line.

No importance is attached to the agreement between the plaintiff and the defendant's grantor as to the distance at which each might set trees; as the defendant, especially as for ought that appears, purchased without notice of it, and is not bound by such verbal agreement.

Judgment reversed and new trial granted.