JOSEPH B. COBB *v.* WESTERN UNION TELEGRAPH COMPANY.

February Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed October 9, 1916.

*Trees—Right to Cut When Overhanging Division Line—Trespass—Railroads—Telegraph Companies.*

When the base of a tree is wholly on the land of one owner, the whole tree is his without reference to its ramifications.

Where a tree stands wholly on the ground of one, and so is his tree, any part of it which overhangs the land of an adjoining owner may be cut off by the latter at the division line. And this may be done without reference to the length of time during which such condition has existed, and without notice to the owner of the tree if the cutting is done without going upon his land.

A different rule than that above stated applies to a tree standing on a division line, in which both adjoining owners have an interest.

A railroad company may by contract grant to a telegraph company authority to construct a telegraph line upon its right of way, with the rights incidental to such construction, such rights being in furtherance of the duties of the railroad company in moving its trains, and not obstructive thereof, and, in pursuance of the authority thus given, the telegraph company may cut off at the division line a tree which overhangs the right of way.

TRESPASS on the freehold, brought to recover damages for the cutting of two trees belonging to the plaintiff. Plea, the general issue, with notice of special matter in defence, in substance, that the defendant had a contract with the Rutland Railroad Company whereby a line of poles and telephone and telegraph wires was maintained by the defendant upon the right of way of the railroad for the joint use of the defendant and the railroad company; that, acting under the said contract and by direction of the railroad company, the defendant cut the branches and parts of the trees which overhung the right of way of the railroad company, without entering upon or going over the land of the plaintiff; that the cutting was done so that the location of the poles and wires upon the right of way might be moved, because of certain changes ordered by the Public Service Commission for the elimination of a highway crossing, and that if allowed to remain the trees would have prevented and interfered with the construction and maintenance of the wires.

Trial by jury, December Term, 1914, Addison County, *Miles*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case.

*Leroy C. Russell* for the plaintiff.

*E. W. Lawrence* for the defendant.

HASELTON, J. This is an action of trespass on the freehold brought to recover damages for the cutting of portions of certain shade trees in front of the plaintiff's house in Middlebury.

The plaintiff's premises adjoined the right of way of the Rutland Railroad Company; the dividing line, as agreed to on the trial, being the easterly face of a certain wall.

The trees, two in number, upon which the cutting was done,

were not line trees, but stood upon the premises of the plaintiff a short distance westerly of the dividing line; though some of the limbs and branches of both and what the exceptions call "the main trunk" of one overhung the right of way.

Upon the trial it appeared that the defendant by its servants and agents cut certain branches from both trees, where they overhung the right of way, and cut off the main trunk of one of the trees at a point where such trunk overhung the right of way.

The defendant, the Western Union Telegraph Company, relied, for its right to do the cutting, upon a contract with the Rutland Railroad Company, by the terms of which, among other things, a joint line of telegraph poles and lines along the railroad company's right of way was to be maintained and renewed by the telegraph company for the transaction thereover of both railroad business and commercial telegraph business. Trial by jury was had, and verdict and judgment were for the defendant.

It seems clear that the railroad company might have done this cutting on its right of way, of which it had a deed.

When the base of a tree is wholly on the land of one owner, the whole tree is his without reference to its ramifications. Some confusion has been caused by the use of the word "trunk," but in *Skinner* v. *Wilder*, 38 Vt. 115, 88 Am. Dec. 645, our Court, in a thoroughly considered opinion by Judge Peck, calls the trunk "the body of the tree above the surface of the soil," and this means the body of the tree at the surface of the soil. We do not here traverse the ground gone over in that opinion. We merely note, for the convenience of future students, that the case from Popham, there cited as *Miller* v. *Fondyce*, is in fact *Mitten* v. *Faudrye*, that the case cited as *Holden* v. *Coates* is, to be correct, *Holder* v. *Coates;* and that *Norris* v. *Baker* is to be found at page 196 of 3 Bulstrode, instead of at page 178 as the printed opinion indicates, and that the name of the case in Bulstrode is *Morrice* v. *Baker*, though the same case is reported as *Norris* v. *Baker* in 1 Rolle at page 393.

These matters we mention in aid of those who care to make independent research. To resume: After considering the discussion in many cases, we are satisfied that it is a sound principle that where a tree stands wholly on the ground of one and so is his tree, any part of it which overhangs the land of an adjoining owner may be cut off by the latter at the division line.

This is the doctrine of the recent English case of *Lemmon*

v. *Webb*, 3 Ch. 1, decided in the Court of Appeal in 1894, and affirmed on appeal to the House of Lords (1895) A. C. 1.

There the parts of the tree cut had overhung for more than 20 years.

The doctrine of the case is that whatever overhangs may be cut off, without reference to the length of time during which such condition has existed, and without notice to the owner of the tree if the cutting is done without going upon his land.

In the Chancery Division it was held that the right to cut overhanging "timber" is clear, that it is too late "to say that a neighbor's tree overhanging my land is not a nuisance;" that the owner of the tree "must not allow it to interfere with his neighbor's rights;" but it was there held that the owner of the tree ought to have notice and opportunity to do the cutting himself.

However, the Court of Appeal held that the right of an owner of land to free it from the obstruction of overhanging trees exists without notice so long as he operates on his own land in clearing away obstructions vertically above it, that without notice, the owner of land is entitled to cut away all encroachments over his land from trees of another so long as he does not trespass upon the land of that other.

On appeal to the House of Lords the decision of the Court of Appeal was sustained. The head-note of the case there is this: "The owner of land, which is overhung by trees growing on his neighbor's land, is entitled, without notice, if he does not trespass on his neighbor's land, to cut the branches so far as they overhang, though they have done so for more than twenty years."

After the base of a tree standing on one man's land divides, each division, without respect to its size, is a branch, and no matter what it is called or what its size, if a branch extends over the land of another, the latter may cut it off at the division line.

It is a tree standing on the division line, one in which both adjoining owners have an interest, to which a different rule applies. *Skinner* v. *Wilder*, 38 Vt. 115, 82 Am. Dec. 645; 1 R. C. L. §41, p. 401.

Not only were the trees in question not of that character, but the plaintiff claimed below that the tree was his own, and requested and got a charge to the jury to that effect.

There was evidence tending to show, and under the instruc-

tions of the court, the jury must have found, that in connection with the cutting the land of the plaintiff was not trespassed upon.

But the plaintiff urged and urges that whatever the rights of the railroad company may have been, the defendant, the telegraph company, had no rights in the matter. But the contract, introduced in evidence, showed an agreement between the two companies by which the telegraph company, acting in behalf of the railroad company and of itself, might construct and maintain telegraph lines over the right of way for the joint use of both companies, preference being given to the railroad use in the moving of trains, and it was upon this contract that the telegraph company relied for its right to construct a line for such use at the time it did the cutting in question. The plaintiff objected to the admission of the contract in evidence, but it was admissible.

It showed that the telegraph company had derived from the railroad company the right to construct the line in question with the rights incidental to such construction. For the railroad company might properly empower another to exercise such right or rights over its right of way, such exercise being in furtherance of the duties of the railroad company in moving its trains, and in no respect obstructive thereof. *Grand Trunk R. Co.* v. *Richardson,* 91 U. S. 454, 468, 23 L. ed. 356; *Osgood* v. *Central Vermont Ry. Co.,* 77 Vt. 334, 344, 60 Atl. 137, 70 L. R. A. 930; *Ide* v. *Boston & Maine Railroad,* 83 Vt. 66, 76, 74 Atl. 401.

It may be mentioned that the occasion for the construction or reconstruction of the line in question was the recent elimination of a grade crossing.

What has been said sufficiently covers the material matters raised by exceptions and here relied on.

*Judgment affirmed.*