2015 VT 86

### Bruce Alvarez and Janet Alvarez v. Sheldon M. Katz and Claudia Berger

[124 A.3d 839]

No. 14-385

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed June 19, 2015

---

*Norman Williams* and *David A. Boyd* of *Gravel & Shea PC*, Burlington, for Plaintiffs-Appellees.

*Claudia Berger* and *Sheldon M. Katz*, Pro Ses, South Burlington, Defendants-Appellants.

¶ 1. **Eaton, J.** New England poet Robert Frost once observed that "[g]ood fences make good neighbors." Robert Frost, *Mending Wall, in North of Boston* (Edward Connery Latham ed., 1977). The same, it appears, cannot be said of good trees. This is a case of protracted litigation, with extensive motion practice, between neighbors over a maple tree. For the reasons stated herein, we vacate the injunction and remand to the trial court for entry of judgment in favor of appellants Claudia Berger and Sheldon Katz and for determination of the form of declaratory relief in their favor regarding removal of the encroaching roots and branches from the Berger/Katz property.

¶ 2. Berger and Katz own property at 54 Central Avenue in South Burlington in the Shelburne Bay area. The Alvarezes own the adjoining lot just to the north at 52 Central Avenue. The property is part of a residential neighborhood consisting of shallow lots with a limited view of Lake Champlain.

¶ 3. The maple tree in question is about sixty-five years old and stands about sixty-five feet tall. The trunk or stem of the tree is located entirely on the Alvarez property, approximately two feet from the property line. Although the superior court considered the tree to "effectively" be on the property line, the parties agree that the property line does not pass through the trunk of the tree, but lies to the south of the tree trunk. Further, there is no evidence that the tree was either planted as, or intended to be depictive of, the property boundary. When the Alvarezes bought their property approximately twenty-five years ago, the tree was already about one foot in diameter at the base. Approximately half of the branches and roots from the tree now cross the property bound-

ary and encroach onto the Berger/Katz lot. Some roots extend under the existing deck on the Berger/Katz home.

¶ 4. For several years Berger and Katz have sought to expand their home by constructing a two-story addition on the rear which would occupy roughly the same existing footprint as the house and deck at present. Berger and Katz have received the necessary permits for construction of the addition. The plans for the construction of the addition to the Berger/Katz residence would necessitate cutting the roots and branches that are encroaching onto their property. This could encompass up to half of the tree's roots and branches.

¶ 5. Efforts to amicably resolve the problem of the maple tree in light of the planned Berger/Katz addition went for naught. In 2013, when Berger and Katz considered taking unilateral action to trim the tree's roots and branches, the Alvarezes filed for and received a temporary injunction, and later a permanent one. The superior court found it more likely than not that removal of 50% of the tree's roots and branches as contemplated would result in the premature death of the tree, perhaps within five years and probably within ten from the time of cutting. The final injunction barred the trimming of more than 25% of the roots and branches of the tree.

¶ 6. The trial court granted the temporary injunction, employing what it dubbed as the "urban-tree rule." The moniker attached to this theory stemmed from the trial court's belief that California, New York, and New Jersey place restrictions on the right of an adjoining landowner to trim roots or branches intruding onto their land from a neighbor's property due to the urban nature of those states. Under the "urban-tree rule," as described by the trial court, trimming the roots or branches of an encroaching tree may be proscribed if the trimming will destroy the tree. Although the judge hearing the permanent injunction questioned the validity of the "urban-tree rule," he felt it improper to apply a different legal analysis, relying upon it as the "law of the case."

¶ 7. This appeal from the permanent injunction followed. We review the superior court's decision to grant injunctive relief for an abuse of discretion. *Obolensky v. Trombley*, 2015 VT 34, ¶ 18, 198 Vt. 401, 115 A.3d 1016. "We will not reverse the trial court's decision if the record below reveals any legal grounds that would justify the result." *Alberino v. Balch*, 2008 VT 130, ¶ 7, 185 Vt. 589, 969 A.2d 61 (mem.).

¶ 8. ▪ Appellants allege the superior court erred in granting an injunction because the common law allows for an absolute right of a landowner to trim intruding branches and roots regardless of the impact on the offending tree; because there is no showing that the cutting would cause irreparable harm sufficient to support an injunction; and because injunctive relief results in a taking of appellants' property without compensation. Because we reaffirm Vermont's long-standing right of a property owner to trim branches and roots from an encroaching tree without regard to the impact that such trimming may have on the health of the tree, and vacate the injunction on that basis, we do not reach appellants' other arguments.

¶ 9. ▪ Vermont has long recognized ownership of property to include the ownership of that which is below the ground and that which is attached overhead. *Stratton v. Lyons*, 53 Vt. 641, 643 (1881) ("[W]hoever is in possession of the surface of the soil is in law deemed to be in possession of all that lies underneath the surface. Land includes not only the ground or soil, but everything attached to it, above or below."). The right of a property owner to trim nonboundary trees back to the property line cannot be gainsaid. This right has been clear for at least the last 100 years. *Cobb v. W. Union Tel. Co.*, 90 Vt. 342, 344, 98 A. 758, 759 (1916) ("[I]t is a sound principle that where a tree stands wholly on the ground of one and so is his tree, any part of it which overhangs the land of an adjoining owner may be cut off by the latter at the division line."). The superior court considered this case to be one of first impression in Vermont because of the anticipated adverse — and likely fatal — effect the proposed root-and-branch cutting would have on the encroaching tree, distinguishing this situation as an exception to the *Cobb* rule. The attempt to distinguish *Cobb* is inconsistent with its holding. Further, the "urban-tree rule" does not enjoy the support attributed to it by the superior court.

¶ 10. ▪ As a starting point, the law recognizes a distinction in treatment between trees that are on the boundary line ("line trees") and those on one side of a property line that intrude via branches, roots, or both onto neighboring property. A tree standing on the division line between adjoining proprietors, such that "the line passes through the trunk or body of the tree above the surface of the soil, is the common property of both proprietors as tenants in common." *Skinner v. Wilder*, 38 Vt. 115, 116-17 (1865).

Neither may hew down his part of the tree to the property line and destroy the part belonging to the other. *Id.* at 117.

¶ 11. ■ The property line here does not pass through the trunk or body of the tree, a distinction which affects the rights each party has concerning the tree. The superior court was incorrect that this tree is "effectively" a line tree. A line tree enjoys clarity under the law; either the property line passes through the stem of the tree or it does not. The former is a line tree, the latter is not. Absent the property line passing through the tree trunk, it cannot be considered a "line tree," and thus it is not owned by the parties as tenants in common. *Id.* at 116-17. The tree belongs to the Alvarezes and is not commonly owned.

¶ 12. The superior court's determination that this case is one of first impression requires an exceptionally narrow reading of *Cobb.* *Cobb* involved the trimming of two trees belonging to Cobb but encroaching into the right of way of the Rutland Railroad. The trees were on the Cobb property, a short distance from the right-of-way line, with branches from both trees and the main trunk of one overhanging into the right of way. At the direction of the railroad, agents of Western Union cut off the branches of one tree and the main trunk of the other where they overhung into the right of way. No trespass onto Cobb's land occurred during the cutting.

¶ 13. ■ In considering Cobb's claim for damages for the cutting of his trees, this Court stated: "we are satisfied that it is a sound principle that where a tree stands wholly on the ground of one and so is his tree, *any part* of it which overhangs the land of an adjoining owner may be cut off by the latter at the division line." *Cobb*, 90 Vt. at 344, 98 A. at 759 (emphasis added). *Cobb* did not suggest any limitation on the right to cut encroachments — in fact, quite the opposite is true: *any* encroaching part of the tree may be removed. *Id.* The *Cobb* Court recognized the right to cut off the main trunk of one of the trees where it entered the right of way. Any limitation in *Cobb* to "nonfatal" cutting as construed by the court below is not supported by the language or facts of that case.

¶ 14. ■ In the ninety-nine years since *Cobb* was decided, our Legislature has not seen fit to modify its holding by enacting any statute imposing a limitation on the cutting of encroaching trees. The right to cut encroaching trees where they enter the land of

another, without regard to the impact on the encroaching tree by such cutting, is well-established under Vermont law.

¶ 15. Appellants assert that every jurisdiction to consider the issue has universally recognized the *Cobb* rule of self-help by permitting cutting of the encroaching tree to the extent of encroachment. While courts have imposed limitations in a few cases, the *Cobb* rule enjoys extremely widespread support. See, e.g., *Harding v. Bethesda Reg'l Cancer Treatment Ctr.*, 551 So. 2d 299, 302 (Ala. 1989); *Cannon v. Dunn*, 700 P.2d 502, 503 (Ariz. Ct. App. 1985); *Bonde v. Bishop*, 245 P.2d 617, 620 (Cal. Dist. Ct. App. 1952); *McCrann v. Town Plan & Zoning Comm'n*, 282 A.2d 900, 906 (Conn. 1971); *Sterling v. Weinstein*, 75 A.2d 144, 148 (D.C. 1950); *Gallo v. Heller*, 512 So. 2d 215, 216 (Fla. Dist. Ct. App. 1987) (per curiam); *Whitesell v. Houlton*, 632 P.2d 1077, 1079 (Haw. Ct. App. 1981); *Lemon v. Curington*, 306 P.2d 1091, 1092 (Idaho 1957); *Toledo, St. Louis & Kan. City R.R. v. Loop*, 39 N.E. 306, 307 (Ind. 1894); *Pierce v. Casady*, 711 P.2d 766, 767 (Kan. Ct. App. 1985); *Melnick v. C.S.X. Corp.*, 540 A.2d 1133, 1135 (Md. 1988); *Michalson v. Nutting*, 175 N.E. 490, 491 (Mass. 1931); *Holmberg v. Bergin*, 172 N.W.2d 739, 744 (Minn. 1969); *Jurgens v. Wiese*, 38 N.W.2d 261, 263 (Neb. 1949); *Wegener v. Sugarman*, 138 A. 699, 700 (N.J. 1927); *Loggia v. Grobe*, 491 N.Y.S.2d 973, 974 (Dist. Ct. 1985); *Jones v. Wagner*, 624 A.2d 166, 168 (Pa. Super. Ct. 1993); *Rosa v. Oliveira*, 342 A.2d 601, 605 (R.I. 1975); *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 364 (Tenn. 2002); *Gostina v. Ryland*, 199 P. 298, 301 (Wash. 1921). It is clear, however, that the right to self-help extends only to the property line. Under the self-help remedy, a landowner subject to encroachment may not cross the property line and cut or remove that part of a tree or hedge which has not encroached. *Wegener*, 138 A. at 700.

¶ 16. On the other hand, what the superior court dubbed the "urban-tree rule" has received limited support. One California decision imposes a duty to act reasonably in exercising the self-help remedy. *Booska v. Patel*, 30 Cal. Rptr. 2d 241, 245 (Ct. App. 1994). Without discarding the self-help rule, *Booska* holds that in exercising it one must act reasonably toward the neighboring property owner. *Id.*

¶ 17. An unreported New York decision from a lower court limits the right of self-help removal of encroaching branches and roots to situations where the exercise of that right does not destroy or injure the main support system of the tree. *Fliegman v. Rubin*,

781 N.Y.S.2d 624 (App. Term 2003) (unreported). *Fliegman* has received scant support since its issuance.

¶ 18. ■ Examination of the common law reveals that the right to cut encroaching boughs and roots historically counterbalanced a landowner's right to grow shade trees on his land, regardless of the impact those trees may have in casting shade or encroaching upon the neighboring property.

> As against adjoining proprietors, the owner of a lot may plant shade trees upon it, or cover it with a thick forest, and the injury done to them by the mere shade of the trees is damnum absque injuria [loss without injury]. It is no violation of their rights. We see no distinction in principle between damage done by shade, and damage caused by overhanging branches or invading roots. The principle involved is that an owner of land is at liberty to use his land, and all of it, to grow trees. Their growth naturally and reasonably will be accompanied by the extension of boughs and the penetration of roots over and into adjoining property of others. . . .
>
> The neighbor, [though] without right of appeal to the courts if harm results to him, is, nevertheless, not without remedy. His right to cut off the intruding boughs and roots is well recognized. His remedy is in his own hands. The common sense of the common law has recognized that it is wiser to leave the individual to protect himself, if harm results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious.

*Michalson*, 175 N.E. at 490-91 (quotations and citations omitted). Thus, at the common law, there was no claim for damages caused by encroaching roots or branches. The remedy was one of self-help, allowing the cutting of roots and branches to the extent of encroachment.

¶ 19. Where other jurisdictions have departed from the common-law rule and allowed actions for damages as a result of encroaching roots or branches, they have generally relied upon nuisance

principles. See, e.g., *Curry & Sons*, 92 S.W.3d at 360-63 (surveying approaches from across the country regarding the availability of remedies beyond self-help). Even where such actions have been permitted, those jurisdictions continue to recognize the right to self-help. See, e.g., *id.* at 360 ("Although the jurisdictions uniformly agree that self-help is an appropriate remedy, they are divided on the availability of any remedy beyond self-help.").

¶ 20. Of course, the issue of whether a nuisance claim might exist for the encroachment of roots and branches from the Alvarezes' tree is not presently before the Court. Rather, this case presents the competing interests of neighboring property owners. On the one hand, Berger and Katz have an interest in using their land, which they have purchased and upon which they pay taxes, as they see fit, within permissible regulations, free from limitations imposed by encroaching roots and branches from the neighbors' tree, which they did not invite and for which they receive no benefit. The Alvarezes seek to restrict the use of the Berger/Katz property by preventing the removal of branches and roots on land that is not theirs and for which they have given nothing of benefit to Berger and Katz for suffering the encroachment. On the other hand, the Alvarezes wish to continue to enjoy their tree, which has been there for many years, without placing its viability in peril due to the construction that Berger and Katz wish to undertake.

¶ 21. The law in Vermont, and overwhelmingly from other jurisdictions, resolves these competing interests in favor of the right of Berger and Katz to enjoy the use of their land by allowing them the right to remove the encroaching roots and branches. Potential limitations requiring that such removal be done reasonably and not negligently are not before the Court here. If the Alvarezes had the right to have their tree encroach onto the Berger/Katz property, the obvious next question would be to what extent the encroached-upon property owner must suffer such an encroachment. We would be hard-pressed to create a workable rule which would serve to limit encroachments in number, extent, or distance that a property owner must tolerate from neighboring trees before allowing the property owner to exercise self-help. Although we are cognizant that on some occasions the exercise of self-help may result in the immediate or eventual loss of an encroaching tree, given the long-recognized rule in Vermont and its widespread support elsewhere, we decline

to depart from the common-law rule in favor of the approach adopted by the superior court.

¶ 22. ▇ The Alvarezes also argue that 13 V.S.A. § 3606 prevents Berger and Katz from "destroying" the maple tree. This timber statute did not create a cause of action, but rather allowed cumulative damages for injuries actionable at common law. *Vaillancourt v. Dutton*, 115 Vt. 36, 38, 50 A.2d 762, 764 (1947) (citing *Hathaway v. Goslant*, 77 Vt. 199, 59 A. 835 (1905)). This statute is based upon trespass. *Id.* at 37-38, 50 A.2d at 763-64 (noting that statutory modification of common-law action of trespass does not introduce a new cause of action). The Alvarezes do not allege that trespass occurred here, and the timber statute creates no bar to the remedies available to Berger and Katz under the common law.

¶ 23. The superior court issued both a temporary and permanent injunction, finding that damages for wrongful injury to or destruction of the tree, if proven, would not provide an adequate remedy due to the difficulty of replacement and the value to the landowner. Because of our disposition of this case we need not reach this issue.

¶ 24. Lastly, Berger and Katz seek a declaration that the Alvarezes must either remove the offending branches and roots or compensate Berger and Katz for doing so. Consistent with this opinion, Berger and Katz are entitled to the declaratory relief requested. We leave to the trial court upon remand the task of determining the form of declaratory relief concerning removal of the encroaching roots and branches.

*The decision of the superior court, civil division granting injunctive relief is reversed. The injunction is vacated and the case remanded for entry of judgment in favor of Berger and Katz and for determination of the form of declaratory relief in their favor regarding removal of encroaching roots and branches.*