STATE OF MAINE                            SUPERIOR COURT
CUMBERLAND, ss.                        CIVIL ACTION
                                      DOCKET NO. RE-20-0073

|  |  |  |
|---|---|---|
| ALAN R. ATKINS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETER T. ADAMS & MARIE F. ADAMS, | ) | |
| | ) | |
| DEFENDANTS, | ) | |
| | ) | ORDER |
| AND | ) | |
| | ) | |
| PETER T. ADAMS & MARIE F. ADAMS | ) | |
| | ) | |
| COUNTERCLAIM PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALAN R. ATKINS & GAIL P. ATKINS | ) | |
| | ) | |
| COUNTERCLAIM DEFENDANTS, | ) | |

Currently before the court are the parties' cross motions for summary judgment. Alan Atkins ("Atkins") is both the original Plaintiff and a counterclaim Defendant along with his wife Gail Atkins (collectively "Atkinses"). The Atkinses filed a Motion for Summary Judgment on the Defendant's one count counterclaim on August 20th, 2021. On the same day, Peter Adams and Marie Adams (individually "Mr. Adams" and "Mrs. Adams" collectively "Adamses") moved for Summary Judgment on the Plaintiff's three count complaint and their one count counterclaim. For the reasons set forth herein, the Atkinses' Motion for Summary Judgment on the Adamses'

REC'D CUMB CLERKS OF
OCT 29 '21 AM8:53

1

Counterclaim is DENIED and the Adamses' Motions for Summary Judgment on their Counterclaim is GRANTED. The Adamses' Motion for Summary Judgment on Atkins' three count complaint is GRANTED IN PART.

## FACTUAL BACKGROUND

This case is about an eighty foot tall,100 year old red oak tree ("Tree") that sits on the boundary between two abutting properties, each owned by a party to this action. (Plaintiff's Statement of Material Facts ("Pl.'s S.M.F.") ¶¶ 4-6.)[1] The Atkinses live at 1165 Shore Road in Cape Elizabeth and the Adamses reside at 3 Todd Road, also in Cape Elizabeth. (Defendants' Statement of Material Facts ("Defs.' S.M.F.") ¶¶ 1, 3.)[2] The trunk of the Tree sits on the Atkinses' property, while the crown of the Tree and many branches which stem from the Tree's "leader" extend over the Adamses' property.[3] (Pl.'s S.M.F. ¶ 7.) The Atkinses claim that the Tree is in good health and that any alterations to the Tree would be fatal, while the Adamses claim that the Tree is "structurally compromised," and requires some level of support or alteration in order to remain standing. (Pl.'s S.M.F. ¶ 19; Defs.' S.M.F. ¶ 50.)

On September 1st, 2020, Mrs. Adams noticed a man named Taylor Schultz ("Schultz"), an employee of Tree Guys Inc., doing tree work on a property located across the street from her residence. (Defs.' S.M.F. ¶¶ 10-11.) Mrs. Adams approached Schultz to inquire about some of

---

[1] In this action, the Counterclaim Defendants Atkinses have only moved for Summary Judgment on the Defendant's counterclaim, and not on their initial complaint. Thus, any citation to the Atkinses statement of material facts should technically read "Counterclaim Defendants Statement of Material Facts." For the sake of simplicity and consistency, the Atkinses' Statement of Material Facts is cited as "Pl's S.M.F." and the Adamses is cited as "Defs.' S.M.F." throughout.

[2] Because it is relevant to the court's declaratory judgment analysis, the court notes that the Atkinses have title to their Shore Road property by virtue of a deed from Shawn and Kathryn Damon dated June 16th, 2014, and recorded in the Cumberland County Registry of Deeds Book 31565, Page 134. (Pl.'s S.M.F. ¶ 1.) The Adamses have title to their Todd Road property by virtue of a deed from Henry C. Adams dated September 27th, 2019 and recorded in the Cumberland County Registry of Deeds in Book 36026, Page 165. (Defs.' S.M.F. ¶ 1.)

[3] A "leader" a portion of the tree much larger than a normal branch that oftentimes forms a large section of a tree's crown.

the trees located in her yard. (Defs.' S.M.F. ¶ 12.) She did this with the intention of hiring Schultz and Tree Guys to trim and/or cut some of the trees they viewed. (Defs.' S.M.F. ¶ 12.) At some point during their conversation, Schultz and Mrs. Adams began examining the Tree. (Defs.' S.M.F. ¶ 13.) As they were discussing the Tree, Atkins noticed them and went to speak with them, hoping to dissuade them from taking any action related to the Tree. (Defs.' S.M.F. ¶ 18.) Later that same day, Mr. Adams and Atkins also had a conversation about the Tree and Atkins' desire to preserve it. (Defs.' S.M.F. ¶¶ 24-25.) The parties dispute whether Mr. or Mrs. Adams were on the Atkinses' property during either of these encounters. (*See* Defs.' S.M.F. ¶ 17; Pl.'s Resp. Defs.' S.M.F. ¶ 17; Defs.' S.M.F. ¶ 26; Pl.'s Resp. Defs.' S.M.F. ¶ 26.)

On September 15th, 2020, Atkins filed a two count complaint against the Adamses alleging one count of trespass and asking for a permanent injunction preventing the Adamses from interacting with the Tree in any way. (Pl.'s S.M.F. ¶ 36.) Along with this complaint, Mr. Atkins moved for—and was granted—a temporary restraining order ("TRO") which prevented the Adamses from entering on the Atkinses property and from touching, damaging, removing, severing, or cutting down any part of the Tree.[4] (Order, September 15th, 2020, RE-20-0073.) Sixteen days after this court granted the TRO, Atkins amended his original complaint to add a third count seeking a declaratory judgment that the Adamses have no right to touch, damage, remove, sever or cut down any portion of the Tree. (Defs.' S.M.F. ¶ 46.)

On October 26th, 2020, the Adamses filed an answer to Mr. Atkins' complaint and filed a counterclaim, later amended, naming both Mr. and Mrs. Atkins as Defendants. The Adamses' one count counterclaim seeks a declaratory judgment in their favor, stating that they have a right to trim any of the Tree's branches or limbs which encroach upon their property. The Atkinses

---

[4] This temporary restraining order ("TRO") remains in effect. (Defs.' S.M.F. ¶ 44.) However, as discussed *infra* at 11, this Order dissolves the TRO.

3

then properly answered the Adamses' counterclaim on November 12th, 2020, and on February 23rd, 2021, the parties unsuccessfully attempted to resolve the instant dispute through the alternative dispute resolution process.

On August 20th, 2021, the Parties each moved for Summary Judgment on their respective filings. The Atkinses sought summary judgment on the Adamses' one count counterclaim, as did the Adamses. The Adamses also sought summary judgment on Atkins' three count complaint.

## STANDARD OF REVIEW

When there are cross-motions for summary judgment, the rules for consideration of summary judgment are applied separately to each motion. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. The record on each summary judgment issue must be considered most favorably to the party objecting to the grant of summary judgment on that issue. *Blue Star Corp. v. CKF Properties LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Dyer*, 2008 ME 106 ¶ 14, 951 A.2d 821. A "genuine issue" of material fact exists if the claimed fact would require a factfinder to choose between competing versions of the truth. *Id.* (quotations omitted).

4

**DISCUSSION**

The Atkinses initial complaint contains three counts. Count I alleges Trespass by both Mr. and Mrs. Adams. First, it alleges that Mrs. Adams trespassed on the Atkinses' property on September 1st, 2020, when herself and Schultz were speaking about the Tree. It also alleges that, on that same day, Mr. Adams went to speak to Mr. Atkins about the tree and, in doing so, also trespassed on the Atkinses' property. Count II requests that a permanent injunction be entered against the Adamses, extending the current TRO and making it permanent. Count III of the complaint seeks a declaration of the Adamses rights with respect to the Tree and asks for a declaration that they are not permitted to touch, damage, remove, sever or cut down any portion of the Tree originating on the Atkinses property.

The Adamses Counterclaim contains one count which seeks the alternative declaration from this court, that, pursuant to their rights in the property to which they own title, they are permitted to touch, damage, remove, sever or cut down any portion of the tree encroaching on their property and residence. Count I of the underlying complaint is addressed first below. Count III of the Complaint and Count I of the Counterclaim are addressed together in the second section of this order, and Count II of the complaint is addressed last.

**I.    Trespass**

First, the court addresses the Adamses' Motion for Summary Judgment on Count I of the initial two count complaint filed by Atkins on September 15th, 2020. Count I alleges that both Mr. and Mrs. Adams trespassed on Atkins' property when they "entered the Plaintiff's property without permission" on September 1st, 2020. (Pl.'s Compl. 3.)

A person is liable for common law trespass "if he *intentionally* enters land in the possession of the other, or causes a thing or a third person to do so." *Medeika v. Watts*, 2008 ME

5

163, ¶ 5, 957 A.2d 980 (quoting Restatement (Second) of Torts § 158 (1965))(emphasis added). To establish that a party is liable for trespass, the plaintiff must establish both intent and unprivileged interference with his right to possession of his property. *See Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 505 n.1 (Me.1996) (citation omitted).

As for the intent element, "[t]he minimum ... necessary for the tort of trespass to land is simply acting for the purpose of being on the land or knowing to a substantial certainty that one's act will result in physical presence on the land." *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1353 (Me.1996)(quoting Donald N. Zillman et al., Maine Tort Law § 5.12 at 5–22 (1995)). "One may intend to enter upon the land of another but under the reasonable misapprehension that his entry is lawful. *Hayes v. Bushey*, 160 Me. 14, 17, 196 A.2d 823, 825 (1964). Such a mistake does not avoid his liability for trespass. *Id.* It is only the intention *to enter* the land of another that is an essential element of trespass and the absence of such an intention or such negligence will destroy liability." *Id.*

In the instant case, the record generates a genuine factual dispute as to whether Mr. or Mrs. Adams entered onto Atkins' property because Atkins testified that he saw them there. Whether his testimony is credible is to be decided by the factfinder at trial, not by the court at summary judgment.

To avoid summary judgment, the Plaintiffs must also generate a genuine dispute as to whether Mr. and Mrs. Adams intended to enter his land. With respect to Mrs. Adams, the Plaintiff's statements of material fact provides testimony that she was standing on Mr. Atkins' property. The Statements of Material Fact do not reflect, however, whether her presence on the land was fleeting, whether the boundary was clearly marked, or to what degree she was over the property line. While the bar to show intent is low, there must be some evidence she acted for the

6

purpose of being on his land to survive summary judgment. The summary judgment record supplies no facts which create a prima facie case of intent with respect to Mrs. Adams.

The trespass claim against Mr. Adams, on the other hand, survives summary judgment. The record suggests that he entered "20 to 30 feet" onto Mr. Atkins' property. (Defs.' S.M.F. ¶ 26; Pl.'s Resp. Defs.' S.M.F. ¶ 26; Atkins Dep. 20.) At the summary judgment stage, the court must view all inferences and factual assertions in favor of Atkins, the nonmoving party. If Mr. Adams in fact went that distance onto the Atkins property, a factfinder could infer that his entry on the land was intentional.

The Court acknowledges that the trespass appears *de minimis*. The law, however, provides a cause of action for even a *de minimis* trespass

Because the record does generate a genuine issue of fact only as to whether Mr. Adams trespassed on Atkins' property on September 1st, 2020, summary judgment on Count I of the complaint and DENIED with respect to Mr. Adams and is GRANTED with respect to Mrs. Adams.

## II.    Competing Declaratory Judgment Claims

The third issue raised by the parties' cross summary judgment motions is whether either party is entitled to a declaratory judgment as to their rights regarding the Tree. In the third count of his amended complaint, the Plaintiff seeks a declaration that the Adamses have no right "to touch, damage, remove, sever, or cut down any part or portion of the Oak Tree." (Pl.'s Amend. Compl. 4.) The Defendants' have moved for summary judgment on this third count and on their one count counterclaim seeking a declaration in the alternative, that they "have a right to trim, cut or remove branches [or] limbs" of the Tree, located on their property, "including those which threaten to cause damage to [their] property or residence." (Pl.'s Counterclaim 12.). Because

7

these claims present purely a question of law, the court can decide them at summary judgment. *See Carroll v. City of Portland*, 1999 ME 31 ¶ 5, 736 A.2d 279.

The Declaratory Judgments Act found at 14 M.R.S. §§ 5951-5963 empowers courts within their respective jurisdictions "to declare rights, status and other legal relations." The Act "provides a means for parties to have their rights, status and relations under existing written instruments judicially determined." *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980). The act is to be "liberally construed" in order to effectuate its purposes. *Id.*

In the instant case, the parties seek a declaration of their rights under the existing deeds to their respective properties. Atkins seeks a declaration that the Adamses do not have a right to cut or trim the limbs of the Tree which encroach on their property when doing so would cause the death of the tree. The Adamses' seek an opposite declaration, that they do indeed have the right to trim any branches or portions of the Tree which overhang their property, regardless of the effect on the Tree.

A property owner may prune or remove branches overhanging one's property. *See Brokos v. Roussel*, 1992 Me. Super. LEXIS 290 at *4 (Dec. 18th, 1992). Where the roots and branches of trees standing on or near the boundary line extend over or into the adjoining land, the owner of the adjoining land may trim or cut off the intruding growth. *See Alvarez v. Katz*, 2015 VT 86, 124 A.3d 839 (2015); *Scott v. McCarty*, 41 So.3d 989 (Fla. 4th Dist. Ct. App. 2010); *Ponte v. DaSilva*, 446 N.E.2d 77 (Mass. 1983); *Herring v. Lisbon Partners Credit Fund, Ltd. Partnership*, 823 N.W.2d 493 (N.D. 2012). The encroachment of tree limbs, branches, or roots from an adjoining landowner's property may be alleviated by self-help, i.e., by trimming the offending branches or removing the tree roots encroaching upon one's property. *See 1212 Ocean Ave. Housing*

8

*Development Corp. v. Brunatti*, 857 N.Y.S.2d 649 (N.Y. App. 2nd 2008); *Big Bass Lake Community Ass'n v. Warren*, 950 A.2d 1137 (Pa. Commw. Ct. 2008).

The Atkinses, in opposition to the Defendants' Summary Judgment Motion and in support of Mr. Atkins' own Motion for Summary Judgment, suggest the Adamses' right to trim encroaching branches, leaves, trunks or other portions of the Tree is limited by a reasonableness standard. Specifically, the Atkinses urge this court to restrict the Adamses' right when trimming of the branches would be unreasonable given the effect it would have on either the Tree itself, or their property. In support of their contentions they cite two cases, both from other jurisdictions. *See Booska v. Patel*, 30 Cal. Rptr. 2d 241 (Cal. Ct. App. 1994); *Fliegman v. Rubin*, 781 N.Y.S. 2d 624 (N.Y. App. Term. 2003).

*Booska* and *Fliegman* involve plaintiffs who brought suit for damages in tort, after their abutting neighbors removed branches or roots that encroached on their property. In *Booksa,* removal of the encroaching roots resulted in the subject tree's death, 30 Cal. Rptr. 2d at 242, and in *Fliegman*, removal of the root systems of three different trees, caused them to fall and damage the plaintiff's property. 781 N.Y.S. 2d at 625.

In both instances, the court held that one has a duty, in tort, to act reasonably when they seek to trim branches or remove encroaching roots. *See Alvarez*, 2015 VT 86, ¶ 16. This duty of care requires those seeking limb, branch or root removal to consider the effect such removal would have on the tree itself and the abutting property. *Id.*

In this case, a tort cause of action is not before the court. Therefore, the court does not reach whether the Defendants owe a duty to exercise reasonable care when removing encroaching branches and roots to avoid damage to the tree or the abutting property. The Defendants have not conducted any act or omission that would give rise to such a claim for damages. It would be

inappropriate for this court to consider whether a landowner can recover damages for a neighbor's tortious removal of tree branches or roots without such a set of facts before it.

Accordingly, the court grants the Defendant's Motion for Summary Judgment on the Count III of the Plaintiff's complaint and on Count I of the Defendant's counterclaim. The court declares that the Adamses have a right to trim, cut or remove branches or limbs of the Tree that are located on their property.

## III. Injunction

Finally, the court addresses the Adamses' Motion for Summary Judgment on Count II of the Plaintiff's complaint. Count II requests that a permanent injunction be entered against the Adamses, preventing them from "touching, damaging, removing, severing, or cutting down any part or portion" of the Tree, its leader, or any branches encroaching upon their residence. (Pl.'s Amend. Compl. 4.) The Defendants seek summary judgment on the Plaintiff's second count because Atkins "cannot prevail on the merits of the underlying trespass or declaratory judgment claims." (Defs.' Mot. S.J. 12.) Additionally, the Adamses claim, Atkins cannot establish a "prima facie case" as to any of the elements necessary for granting injunctive relief. (Defs.' Mot. S.J. 12.) The Adamses also ask the court to dissolve the Temporary Restraining Order.

### A. Permanent Injunction

A party seeking a permanent injunction, as with a preliminary injunction, must show that: (1) the party would suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm that granting injunctive relief would inflict on the party opposing the injunction; (3) the public interest will not be adversely affected by granting the injunction; *and* (4) the plaintiff succeeds on the merits. *Windham Land Tr. v. Jeffords*, 2009 ME 29 ¶ 8, 967 A.2d 690(citing *Fitzpatrick v. Town of Falmouth*, 2005 ME 97, ¶ 18, 879 A.2d 21)(emphasis

10

added). A court does not consider these elements in isolation, but weighs all the criteria together in determining whether injunctive relief is proper in the specific circumstances of the case. *Walsh v. Johnston*, 608 A.2d 776, 778 (Me.1992).

Here, the Plaintiff has not succeeded on the merits. The central issue in this case is whether the Adamses have a right to trim the branches or limbs which encroach upon and overhang their property. On that issue, the Defendants have prevailed and thus, Atkins' request for permanent injunctive relief is denied. *Town of Charleston v. Sch. Admin. Dist. No. 68*, 2002 ME 95, ¶¶ 6–7, 798 A.2d 1102 (Failure to demonstrate that any one of the elements for injunctive relief are met, "requires that injunctive relief be denied."). Therefore, the Defendant's Motion for Summary Judgment on Count II of the Plaintiff's complaint is Granted.

### B. Temporary Restraining Order

On September 15th, 2020, this court issued a Temporary Restraining Order which prevented the Adamses from entering on the Atkinses property and from touching, damaging, removing, severing, or cutting down any part of the Tree. (Order, September 15th, 2020, RE-20-0073.) Since the court has granted the Defendant's Motion for Summary Judgment on Count II, the temporary restraining order is therefore dissolved.

### IV. Conclusion

The Defendant's Motion for Summary Judgment on the Plaintiff's three count complaint is granted in part. On Count I, the record fails to establish a genuine issue of material fact as to the trespass claims against Mrs. Adams and summary judgment is granted with respect to that claim. With respect to Mr. Adams' alleged trespass, the motion is denied. On Count II, given the Plaintiffs' failure to prevail on the merits, injunctive relief is not available and summary judgment is granted in favor of the Defendants. On Count III, the court finds that the Adamses are entitled

11

to a declaratory judgment that they may trim, cut and remove branches or limbs which encroach upon their property or their residence.

**Entry is:**

Plaintiff's Motion for Summary Judgment on Defendants' counterclaim is DENIED

Defendants' Motion for Summary Judgment on Count I of the Plaintiff's complaint is GRANTED IN PART. The Motion is DENIED with respect to the Trespass claim against Mr. Adams, but is GRANTED with respect to the trespass claim against Mrs. Adams.

Defendants' Motion for Summary Judgment on Counts II and III of the complaint is GRANTED.

Defendants' request for a Declaratory Judgment on Count I of their Counterclaim is GRANTED. The court declares that the Adamses have a right to trim, cut or remove branches or limbs of the Tree that are located on their property.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to

Maine Rule of Civil Procedure 79(a).

Dated: /0/28/12/

Thomas R. McKeon,
Justice, Superior Court

12